UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-101 (SRN/KMM)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | GOVERNMENT'S MOTION FOR |
| v. ) | DETENTION |
| ) | |
| AARON RHY BROUSSARD, ) | |
| ) | |
| Defendant. ) | |

COMES NOW the United States of America, by and through its undersigned attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Thomas M. Hollenhorst, Assistant United States Attorney, and hereby moves this Honorable Court to order the pretrial detention of the defendant, Aaron Rhy Broussard.

## I.   Procedural History

On December 6, 2016, Broussard was charged in a one-count indictment in the Middle District of Pennsylvania with distribution and possession with the intent to distribute a controlled substance resulting in serious bodily injury and death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *See United States v. Aaron Broussard*, Case No. 3:16-cr-00352-RDM (M.D. Pa.) (Doc. 1).[1]   That same day, Broussard was arrested in Hopkins, Minnesota, and had an initial appearance in this district on December 7, 2016. *See United States v. Aaron Broussard*, Case 0:16-mj-00909-KMM (D. Minn.) (Doc. 2). On December 9, 2016, the Court held a detention and removal hearing. *Id.* (Doc. 5).

---

1.   On November 20, 2018, the indictment was superseded making minor technical changes to the count.  *Id.* (Doc. 57).

Broussard waived removal. *Id.* After consideration of the indictment, the pretrial service report, the presumption of detention, and the proffers and arguments of counsel, the Court granted the government's motion for detention. *Id.* (Doc. 6). The Court concluded that Broussard had not provided sufficient information or evidence to rebut the presumption of detention. *Id.*

On April 19, 2019, Broussard was indicted in this district with a comprehensive 21-count indictment, which included a charge for conspiracy (Count 1) to distribute fentanyl and other controlled substances and controlled substance analogues; using the internet to deliver, distribute and dispense controlled substances and controlled substance analogues for human consumption; and using the United States mail to commit said offenses; resulting in the deaths of 11 victims, and serious bodily injury to three others, all in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(h)(1)(A), 841(h)(4), 843(b), 843(d) and 846. The remaining counts of the Indictment (Counts 2-21) are controlled substance offenses that all relate to the allegations contained within Count 1. All of these counts carry maximum terms of imprisonment of 10 years or more. Moreover, Count 1 and Counts 4 through 15 carry mandatory minimum terms of imprisonment of 20 years and maximum terms of imprisonment of life. *See* 21 U.S.C. § 841(b)(1)(B) and 841(b)(1)(C).

II.  Statement of Facts

The charge against Broussard followed an investigation by the United States Postal Inspection Service ("USPIS"), Drug Enforcement Administration ("DEA"), Department of Homeland Security, and several other state and local law enforcement agencies. In the

2

spring of 2016, law enforcement authorities began investigating dozens of fentanyl-related overdoses throughout the United States, at least eleven of which resulted in death.[2] During the course of the investigation, law enforcement determined that the overdose victims had all received fentanyl from "PlantFoodUSA.Net" just before their overdoses. In all cases, the victims had ordered less dangerous drugs but, unbeknownst to them, received fentanyl instead. Investigation has disclosed that PlantFoodUSA.Net was an internet-based website used by Broussard to illegally distribute controlled substances, controlled substance analogues, and other regulated substances.

Investigation revealed that Broussard shipped over a thousand parcels to drug customers throughout the United States from 2014 through the date of his arrest in December 2016. Records obtained from Broussard's Yahoo e-mail account also linked him to numerous purchases of drugs from China, including purchases from indicted co-conspirator "Grace" (True Name Unknown) who ostensibly worked at "Topkey Pharmaceutical Chemical." Investigation has revealed that some of these drug-laden packages were sent to Broussard's mother in New Orleans. *See* Figure 1.

---

2. Fentanyl is a controlled substance which is a potent, synthetic opioid pain medication with a rapid onset and short duration of action. The drug has become a widespread substance of abuse and has been linked to the deaths of thousands of victims in the United States over the last several years including the pop icon Prince.



Figure 1.

One order from Grace was particularly noteworthy in that it concerned the purchase of 100 grams of 4-FA. Customs records reflect that the order was shipped to Broussard on March 16, 2016, and received by him on March 18, 2016. Within a few weeks of that shipment, at least 14 people who had obtained what they thought was 4-FA from Broussard either died or suffered serious bodily injuries from fentanyl-related overdoses.

In May 2016, e-mails between Broussard and Grace reflect that Broussard was aware of some of these overdoses and that he complained to her that the March 2016 shipment was tainted. *See* Count 1 (¶ 3.a.) and Counts 2 and 3. In fact, Broussard asked

4

her to give him extra amounts of drugs "to compensate for the terrible mix up last purchase."  *See* Figure 2.

```
From:Hbjkjnhl Gvjhvgh <tagged12345@ymail.com>
Time:2016 May 6 (Fri) 09:24
To:Grace <grace@topkeychem.com>
Subject:Re: Reply: 回复： Re: 回复： Re: Reply: Reply: Reply: Reply: Reply: Reply: Reply:
Reply: Reply: Reply: Susan

Reference: 42760083

Cash sent & I would really appreciate it, if you can add a little extra to compensate for
the terrible mix up last purchase.

On Wednesday, May 4, 2016 8:14 PM, Grace <grace@topkeychem.com> wrote:

ohh,okk,I am so sorry I am forgot that I quoted for you! and ok it is no problem that we will can
send you 100g with 450usd,including the shipping fee.
Thank you!
best regards
susan
```

Figure 2.

The circumstances of the deaths and serious bodily injuries inflicted upon these victims are both horrific and heartbreaking.  For example, on April 1, 2016, Broussard sent a package to "S.W.F." in Atlanta, Georgia, which S.W.F received on April 4, 2016.  The police responded to his residence on April 6, 2016, to find him dead of a drug overdose.  A small black Mylar Ziploc bag was found at the scene.  A coroner later determined that S.W.F. died from acute fentanyl toxicity.  *See* Count 1 (¶ 3.b.) and Count 4.

On April 8, 2016, the Grand Rapids (Michigan) Police responded to a report of a drug overdose. The victim, "T.O.T.," arrived at a hospital in cardiac arrest and was found with fentanyl in his system. His mother cooperated with the authorities and turned over a small black Mylar Ziploc bag, similar to the one mentioned above, that she found in her son's bedroom with a residue that tested positive for fentanyl. She also turned over a priority mail package that had been delivered to T.O.T. on April 6, 2016, with a return address of Friendly Delivery, P.O. Box 5676, Hopkins, Minnesota (Broussard's "Click-N-Ship" postal account). T.O.T suffered a serious debilitating brain injury and now has great difficulty speaking. *See* Count 1 (¶ 3.c.) and Count 5.

On April 8, 2016, "T.M.R." received a package from Broussard in Paint Lick, Kentucky. Thereafter, family members found T.M.R. comatose in his residence. They took him to at least two hospitals, but he eventually died on April 15, 2016. *See* Count 1 (¶ 3.d.) and Count 6.

On April 11, 2016, Broussard sent a package to "M.J.W." in Peoria Heights, Illinois, which M.J.W. received on April 13, 2016. The police responded to his residence on April 13, 2016, and found him dead from a drug overdose. A coroner determined that he had died from fentanyl intoxication. The police collected evidence at the scene that linked Broussard to the overdose. *See* Count 1 (¶ 3.e.) and Count 7.

On April 12, 2016, Broussard sent a package to "D.L.S." in Aliso Viejo, California, which D.L.S. received on April 15, 2016. On April 16, 2016, the police responded to his apartment to find his fiancé, "D.N.M.," dead from a drug overdose. A coroner determined that she had died from fentanyl intoxication. A small black Mylar Ziploc bag was found

6

at the scene with a residue that tested positive for fentanyl. D.L.S. also overdosed and was rushed to the hospital and spent several months in recovery. He later told the police that he had ordered the lethal drugs from PlantFoodUSA.Net after placing an order for 4-FA. Several months after the incident, Broussard sent an e-mail to D.L.S. requesting a $40 payment for the drugs. D.L.S. responded angrily by telling Broussard that Broussard had killed his fiancé and had put him in the hospital for four months. Despite this e-mail correspondence, Broussard continued to send drugs to other customers throughout the United States. *See* Count 1 (¶ 3.f.) and Count 8.

On April 12, 2016, Broussard sent a package to "D.W.F." in Deltona, Florida, which D.W.F. received on April 14, 2016. The police found him dead at his residence on April 16, 2016. There was evidence found at the scene linking Broussard to the overdose. A coroner determined that Flynn had died from fentanyl intoxication. *See* Count 1 (¶ 3.h.) and Count 10.

On April 14, 2016, investigators linked Broussard to another fentanyl overdose in Minnesota. The victim, "J.M.B.," a professor at the University of Minnesota, was found dead in his office. Items seized from his office included a Friendly Delivery shipping label that had been delivered to his residence on April 13, 2016, and a small black Mylar Ziploc bag with a residue that tested positive for fentanyl. A coroner determined that J.M.B.'s death was caused by a fentanyl overdose. *See* Count 1 (¶ 3.g.) and Count 9.

On April 14, 2016, Broussard sent a package to "S.M.B." in Millcreek, Pennsylvania, which S.M.B. received on April 16, 2016. Emergency medical personnel responded to his residence on April 17, 2016, and found him dead from a drug overdose.

7

A coroner determined that he had died from fentanyl toxicity. *See* Count 1 (¶ 3.i.) and Count 11.

On April 14, 2016, Broussard sent a package to "C.W.K." in Dallas, Texas, which C.W.K. received on April 16, 2016. The police responded to his residence on April 18, 2016, and found him dead from a drug overdose. C.W.K.'s parents later turned over a small black Mylar bag that they had recovered from the scene which contained fentanyl. A coroner determined that C.W.K. had died from the toxic effects of fentanyl. *See* Count 1 (¶ 3.j.) and Count 12.

On April 15, 2016, Broussard sent a package to "V.K.Y.P." in Binghamton, New York, which V.K.Y.P. received on April 18, 2016. He died of a drug overdose on May 2, 2016. The family requested that no autopsy be performed; but, a coroner determined that he had died of a drug overdose after finding fentanyl in his system. *See* Count 1 (¶ 3.k.) and Count 13.

On April 18, 2016, Broussard sent a package to "J.E.S." in Waukee, Iowa, which J.E.S. received on April 20, 2016. J.E.S. ingested the substance, which he thought was 4-FA, overdosed, and was brought to the hospital by his wife, and survived. J.E.S. said that the substance sent by Broussard caused his overdose. *See* Count 1 (¶ 3.l.) and Count 14.

On April 18, 2016, Broussard sent a package to "P.J.R." in Hazel Green, Wisconsin, which P.J.R. received on April 21, 2016. The police responded to his residence after receiving a report of a drug overdose. He was in a coma for six weeks until he died on June 2, 2016. A small black Mylar Ziploc bag was found at the scene that tested positive

for the presence of fentanyl. A coroner determined that P.J.R. had died from fentanyl toxicity. *See* Count 1 (¶ 3.m.) and Count 15.

On May 8, 2016, officers from the Scranton (Pennsylvania) Police Department responded to the scene of another fentanyl overdose. The victim, "A.R.L.," a nursing student was found dead in the residence of her boyfriend, "C.D.S.," a medical student and recreational drug user. The police recovered a jar from the apartment containing fentanyl. The police interviewed C.D.S. who said that he had purchased two grams of what he believed to be 4-FA from PlantFoodUSA.Net which he then put in the jar. He turned over several documents and records linking the purchase of the drugs to Broussard including e-mails, a shipping envelope from Friendly Delivery, a small black Mylar Ziploc bag, and payment records. He said that he had convinced A.R.L. to use some of the drugs with him. When she reluctantly agreed, they both overdosed on the substance. Before she died, A.R.L. was able to drive both of them to the hospital. C.D.S. was admitted for observation; but, A.R.L. was released, returned home, and tragically died from the overdose. A coroner determined that she had died from a fentanyl overdose. Sadly, C.D.S. later committed suicide for having played a role in his girlfriend's death. *See* Count 1 (¶ 3.n.).[3]

From June 24, 2016, through September 26, 2016, investigators seized eight additional parcels sent by Broussard to drug customers. Five of these parcels contained various amounts of controlled substance analogues. Broussard's fingerprints were found

---

3. These facts provided the basis for the charge against Broussard in the Middle District of Pennsylvania.

on the drug packaging in two of the parcels.  *See* Count 1 (¶¶ 3.o. to 3.r.) and Counts 16-19.  The drugs were packaged in small Mylar Ziploc bags just like those Broussard used for drugs sent to those who died and suffered.

On December 6, 2016, investigators searched Broussard's residence in Hopkins, Minnesota, and found several incriminating items including a cornucopia of controlled substances and controlled substance analogues, a pill machine, numerous incriminating documents and records, a computer with incriminating shipment records, and several small black and gold Mylar Ziploc bags.  *See* Count 1 (¶ 3.s.) and Counts 20-21.  During the investigation, investigators have also obtained numerous records establishing Broussard's receipt of tens of thousands of dollars that he earned from his drug trafficking activities.

The harm inflicted to victims and loved-ones cannot be overstated.  As an example, the parents of D.W.F. recently wrote the following:

> It has been almost 5 years since our son along with all the others were taken from us and just knowing that someone is in custody and not allowed to be free to do it again is a small comfort that justice will be done.  Nothing can replace them but knowing that justice is being pursued gives us hope that they won't get away with it.  We want justice for our son . . . and all the others.  He was on track to realizing his dreams and live the life we all want to have.  He didn't deserve to have it ended like this!

E-mail to United States Attorney's Office, dated December 7, 2020.

Broussard is 30 years' old with limited ties to the State of Minnesota.  He appears to have been unemployed for some time, save for his drug distribution activities.  He has a prior juvenile adjudication for felony robbery and adult convictions for possession of drug paraphernalia and driving without a valid license.  He was uncooperative with the Pretrial Service Office at the time of his initial arrest in December 2016.

### III. Argument

#### A. Legal Framework

After the arrest of a person who is charged with a controlled substance offense that carries a maximum term of imprisonment of ten years or more, a judicial officer must conduct a detention hearing to determine whether any condition or combination of conditions of bond will reasonably assure the appearance of the person and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(1)(C). The factors the judicial officer must consider are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A rebuttable presumption of detention applies for all 21 counts of the Indictment. *See* 18 U.S.C. § 3142(e)(3)(A). "[A] defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.*

Pretrial detention may be ordered either upon (1) a showing by clear and convincing evidence that release will result in a danger to the community; or (2) a showing by a preponderance of the evidence that release will result in a serious risk of flight. *See Abad*, 350 F.3d at 797; *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

> B. <u>Broussard Is Both a Danger to the Community and Poses a Serious Risk of Flight</u>

In this context, and after considering the factors outlined in § 3142(g) and the presumption of detention, the need for Broussard's detention is overwhelming. There are simply no conditions or combination of conditions of bond that would reasonably assure his appearance at future hearings or the safety of the community.

> 1. <u>The Nature and Circumstance of the Offenses</u>

The charges against Broussard are particularly egregious. In fact, Congress has deemed them so serious as to mandate a sentence of no less than 20 years' imprisonment upon a conviction for Counts 1 and 4-15. *See* 21 U.S.C §§ 841(b)(1)(B) and 841(b)(1)(C).

Further, in cases like this, the Sentencing Commission has specified a base offense level of 38. S*ee* USSG § 2D1.1(a)(2). On top of this, if convicted, Broussard will likely receive a two-level enhancement because he "distributed a controlled substance through mass-marketing by means of an interactive computer service," and another two-level enhancement because he "maintained a premises for the purpose of manufacturing or distributing a controlled substance." *See* USSG §§ 2D1.1(b)(7) and 2D1.1(b)(12). This would result in a total offense level of 42 and a guideline range of 360 months to life. *See* USSG Ch. 5, Pt. A (Sentencing Table).[4]

The seriousness of the charges against Broussard, standing alone, provide a sufficient basis to detain him. Broussard's drug trafficking activities have been linked to at least 11 homicides and three more drug overdoses. Either intentionally or in a profoundly reckless manner, he sent lethal doses of fentanyl to numerous customers. Many of these customers died, or were otherwise overcome, within minutes after ingesting the drugs. One can hardly imagine a more serious drug crime. The facts of the case are further aggravated by Broussard's own drug use, his receipt of numerous shipments of drugs from international sources, his mass-marketing strategies directed to thousands of potential customers throughout the United States, and his continued drug trafficking activities even after learning that several customers had overdosed from the drugs he had supplied. His lack of remorse is astounding. For example, his request for free drugs from

---

4. Broussard is also facing potential charges under 18 U.S.C. § 1716(d) (sending injurious articles in the mail), a violation which carries "the death penalty or . . . imprisonment for life" if the offense "resulted in the death of any person." *See* 18 U.S.C. § 1716(j)(3).

China to compensate him for the loss of the good will (and the lives) of his customers was simply appalling.

### 2. The Weight of the Evidence

Although a defendant is afforded with the presumption of innocence during a detention hearing, *see* 18 U.S.C. § 3142(j), there is a strong likelihood that Broussard will be convicted of the offenses. The evidence against him is simply overwhelming and comes in the form of witness statements; police surveillance; controlled purchases by law enforcement authorities; controlled deliveries to Broussard's apartment; internet service records; financial records; shipping records; the seizure of drug packaging materials, controlled substances, and controlled substance analogues; and e-mail interceptions obtained through a Title III wiretap.

### 3. The History and Characteristics of the Defendant

While Broussard does not have a lengthy criminal record, his adult convictions and juvenile adjudication for felony robbery paint a picture of a defendant who has a disregard for the law. Standing alone, his record would not compel detention; but, in connection with the other § 3142(g) factors and the presumption of detention, Broussard's criminal record calls for it. Perhaps more importantly, Broussard is an admitted drug user, has limited ties to the State of Minnesota, and appears to have had no legitimate employment before his arrest in December 2016.

4. <u>The Nature and Seriousness of the Danger to any Person or the Community</u>

Broussard's misconduct demonstrates the serious danger he poses to other persons and the community if he is released. While criminal charges tend to curb a defendant's continued misconduct, there is no guarantee that Broussard will discontinue his internet drug trafficking activities. All that Broussard needs is another computer to continue his illegal and dangerous illegal mass-marketing drug venture. Although the risk of that happening may be small, the consequences of him doing so would be severe. Now facing a sentence of at least 20 years in prison and up to life imprisonment, there is no telling what Broussard's motivations might be if released on bond. One thing is certain, however, his release would put countless people at risk of harm. For these reasons, there are no conditions or combination of conditions that would reasonably assure Broussard's appearance and the safety of any other person and the community if he were released on bond.

WHEREFORE, the government respectfully asks this Honorable Court to grant the government's motion and to order that Broussard be detained pending trial.

Dated:   December 10, 2020            Respectfully submitted,

ERICA H. MacDONALD
United States Attorney

s/ *Thomas M. Hollenhorst*
BY: THOMAS M. HOLLENHORST
Assistant United States Attorney
Attorney ID No. 46322