# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | File No. 19-CR-101 |
| Plaintiff, | (SRN/KMM) |
| v. | ORDER ADOPTING R&R |
| | AND AFFIRMING ORDER |
| Aaron Rhy Broussard, | |
| Defendant. | |

---

Thomas M. Hollenhorst and Melinda Williams, United States Attorney's Office, 300 South 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Aaron Rhy Broussard, SPN # 13200, Sherburne County Jail, 13880 Business Center Dr., Elk River, MN 55330, Pro Se Defendant

Aaron J. Morrison, Wold Morrison Law, Ste. 705, 331 Second Ave. S., Minneapolis, MN 55401, Defendant's Standby Counsel

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Objections [Doc. No. 65] filed by Defendant Aaron Rhy Broussard to Magistrate Judge Katherine M. Menendez's July 13, 2021 Report and Recommendation ("the R&R") [Doc. No. 62], and the July 13, 2021 Order ("the Order") on the parties' non-dispositive pretrial motions [Doc. No. 63]. In the R&R, Magistrate Judge Menendez recommended that Defendant's Motion to Dismiss the Indictment [Doc. Nos. 5, 6, 9, 44] be denied, and his Motion to Suppress [Doc. No. 45] be denied. In the Order, as relevant here, Magistrate Judge Menendez denied as moot Defendant's Motion for Disclosure of *Brady* and *Giglio* Material [ECF No. 49], and denied his Motion for a Bill of Particulars

[Doc. No. 51].  For the reasons set forth below, Broussard's Objections are overruled, the Court adopts the R&R and affirms the Order.

## I.    BACKGROUND

### A.  Factual Background

Broussard is charged in a 21-count indictment with unlawful drug importation, possession, and distribution.  Specifically, the Government has charged him with the following:  (1) one count of conspiracy; (2) one count of importation of Fentanyl; (3) seven counts of possession with intent to distribute various controlled substances or controlled substance analogues; (4) nine counts of distribution of fentanyl resulting in death; (5) two counts of distribution of fentanyl resulting in serious bodily injury; and (6) one count of distribution of fentanyl resulting in serious bodily injury and death.  (Indictment, Counts 1–21 [Doc. No. 1].)

The Government alleges that between approximately 2014 and 2016, Broussard ordered a variety of substances, including controlled substance analogues that were intended for human consumption, from an unindicted co-conspirator and other China-based drug suppliers.  (*Id.* ¶¶ 1–2(a)–(h).)  Upon receipt of the substances in Minnesota, the Government alleges, Broussard would repackage them for resale, market them on Internet websites including PlantFoodUSA.Net, and mail them to customers across the United States.  (*Id.*)  The Government further contends that in 2016, Broussard ordered 100 grams of a substance known as "4-FA" (4-Fluoroamphetamine) from China, but received 100 grams of fentanyl, a controlled substance.  (*Id.* ¶ 3.)  Broussard then distributed the fentanyl to customers in the United States, the Government alleges, who ingested the drug, resulting in overdose deaths

in Georgia, Kentucky, Michigan, Illinois, California, Minnesota, Florida, Pennsylvania, Texas, New York, Wisconsin, and non-fatal serious injuries in Michigan, California, Iowa, and Pennsylvania. (*Id.* ¶ 3(a)–(s).)

In December 2016, a grand jury in Scranton, Pennsylvania, indicted Broussard on a single count, charging him with distribution and possession with intent to distribute a controlled substance resulting in serious bodily injury and death in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *See United States v. Broussard*, No. 3:16-CR-352, 2020 WL 3839643, at *1 (M.D. Penn. July 8, 2020). As noted in the R&R, in the Pennsylvania action, Broussard was appointed four different attorneys, filed seven motions to continue, filed a number of pretrial motions, and also filed a petition for a writ of habeas corpus. (R&R at 5.)

In April 2019, a Minnesota grand jury returned the Indictment in this action against Broussard, as described above. The Court appointed counsel for Broussard, although he remained in Pennsylvania. (*Id.*) In December 2020, following the dismissal of the Pennsylvania indictment on the motion of the government in the Middle District of Pennsylvania, the Government here initiated the transfer of Broussard to the District of Minnesota. (*Id.*) After Broussard's initial appearance and detention hearing, the Court held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), and granted Broussard's motion to represent himself. (R&R at 5.) Broussard has filed twelve pretrial motions since being charged here, and the magistrate judge held a pretrial motions hearing on May 10, 2021. (*Id.* at 5–6.)

### 2. R&R and Order

Among Broussard's dispositive motions are the Motions to Dismiss the Indictment and Motions to Suppress [Doc. Nos. 5, 6, 9, 44–51] that Magistrate Judge Menendez addressed in the R&R, as well as Broussard's non-dispositive motions [Doc. Nos. 17, 46–51] that she addressed in the Order.   In the R&R, Magistrate Judge Menendez recommended that Broussard's Motions to Dismiss the Indictment be denied.  She stated that in these motions, Broussard relies on a single, overriding theory that is simply incorrect—namely, that the Government "will be unable to prove the requisite criminal intent under the Controlled Substances Act (CSA), 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), because there is no evidence that [Broussard] intended to distribute a controlled substance."  (R&R at 6) (summarizing Defendant's argument).  Magistrate Judge Menendez noted that Broussard asserted this theory in support of his request for dismissal based on purported prosecutorial misconduct before the grand jury, vindictive prosecution, selective prosecution, and outrageous government conduct. (*See id*. at 11–21.)

In addition, Magistrate Judge Menendez rejected Broussard's claim that his constitutional right to a speedy trial had been violated, finding that most of the delay was attributable to the pending Pennsylvania case. (*Id*. at 31–39.)  In addition, she determined that Broussard did not previously invoke his right to a speedy trial, nor has he demonstrated prejudice resulting from the delay. (*Id*.)

Finally, the magistrate judge recommended the denial of Broussard's motions to suppress, in which he challenged certain searches conducted during the investigation of his case. (*Id*. at 21–29.)

4

Regarding the non-dispositive motions addressed in the Order, as relevant here, Magistrate Judge Menendez denied as moot Broussard's Motion for Disclosure of *Brady* and *Giglio* Material, noting the Government's representation that it had provided the requested information to Broussard.  (Order at 3.)  She also denied Broussard's Motion for a Bill of Particulars, noting that the basis for Broussard's motion stemmed from his "incorrect premise that there is a fundamental flaw in the government's theory."  (Order at 4–5.)  She further found that the Indictment sufficiently informs Broussard of the charges against him.  (*Id*. at 5.)

### 3. Objections

In his Objections, Broussard takes issue with the magistrate judge's interpretation of the statutes under which he is charged—the CSA and the Analogue Act—and legal precedent related to the element of criminal intent under the statutes.  (Objs. at 1–5.)  Consistent with his different interpretation of the applicable legal authority, Broussard objects to the portions of the R&R that address these issues, as well as the magistrate judge's findings and recommendation concerning his claim of a constitutional speedy-trial violation.  (*Id*. at 5–7.)

With respect to the Order, Broussard argues that the magistrate judge erred in denying as moot his Motion for Disclosure of *Brady* and *Giglio* Material and in denying his Motion for a Bill of Particulars.  (*Id*. at 7–10.)

In response to Defendant's Objections, the Government urges the Court to adopt Magistrate Judge Menendez's recommendations.  (Gov't Response [Doc. No. 66] at 1–2.) It argues that Broussard merely rehashes arguments previously made in his filings but raises

no new arguments that would call into question any of the magistrate judge's findings and recommendations.  (*Id.*)

## II.    DISCUSSION

The district court reviews the magistrate judge's recommendations on dispositive matters de novo, undertaking an independent analysis of those portions of the R&R to which a party objects.  28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. L.R. 72.2(b)(3).  The standard of review for an objection to an order on a non-dispositive matter is "extremely deferential," *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999), and the district court will affirm a magistrate judge's order unless it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); D. Minn. L.R. 72.2(a)(3).

### A.  Objections to the R&R

Any analysis of Broussard's objections requires a preliminary grounding in the applicable law under the CSA and the Analogue Act.  As Magistrate Judge Menendez accurately noted, the basis for many of Broussard's arguments stems from his misreading of the law.

### 1.  The Element of Intent Under the CSA and the Analogue Act

In the R&R, the magistrate judge fairly summarized Broussard's interpretation of the law.  Essentially, he argues that the Indictment must be dismissed because the Government cannot prove the necessary element of criminal intent, because there is no evidence that he intended to distribute controlled substances—instead, at most, he intended to distribute a controlled substance analogue, i.e., a substance with a chemical structure that is substantially similar to prohibited controlled substances and which has a similar effect on the central

6

nervous system.  (*See* R&R at 6); 21 U.S.C. § 802(32).  Specifically, Broussard first argues that the Government will be unable to prove that he knowingly distributed fentanyl, a controlled substance, and, at most, the Government might be able to prove that he knowingly distributed 4-FA, an amphetamine that may be considered an analogue drug.  (*See* R&R at 6–7.)  Second, he contends that his alleged intent to distribute 4-FA is insufficient to support a conviction under the CSA, which requires the intentional distribution of a "controlled substance."  (*See id*.)  Because an analogue is not a controlled substance under the CSA, he argues, intent to distribute an analogue is insufficient to sustain a conviction under the CSA. (*Id*.)

In his Objections, Broussard generally reasserts these arguments.  (*Compare* Objs. at 1–5 (asserting various arguments regarding the "accidental distribution" of a controlled substance, technical impossibility, constructive amendment, willful blindness, and whether or not an analogue's status is "definitive"), *with* Def.'s Mot. to Dismiss [Doc. No. 44] at 4–16 (asserting same or similar arguments).)

### a. The CSA

As noted, the Indictment charges Broussard with violations of the CSA and the Analogue Act.  The CSA criminalizes the distribution of a "controlled substance."  It defines a "controlled substance" as "a drug or other substance" listed in several schedules of the statute.  21 U.S.C. § 802(6).  Fentanyl, one of the substances that the Government charges Broussard with distributing, is a controlled substance under the CSA.  *See* 21 U.S.C. § 802(c), schedule II(b)(6).  To establish a violation of the CSA for the knowing distribution of a controlled substance, the Government must prove that the defendant (1) distributed the

controlled substance identified in the Indictment; and (2) knew that he was distributing a controlled substance. 21 U.S.C. § 841(a); *United States v. Ramos*, 814 F.3d 910, 915 (8th Cir. 2016). To satisfy the "knowledge" element of the offense, the Government only needs to establish general criminal intent, i.e., "awareness that the substance possessed was a controlled substance of some kind." *United States v. Sharp*, 879 F.3d 327, 337 (8th Cir. 2018) (citing *Ramos*, 814 F.3d at 915). Therefore, the Government is not required to prove that the defendant knew the specific type or name of the substance. *Ramos*, 814 F.3d at 915 (citing *United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir. 1986)); *see also McFadden v. United States*, 576 U.S. 186, 191–92 (2015) (stating that the CSA's knowledge requirement "may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was."). For example, as Magistrate Judge Menendez correctly stated, "It is settled, for example, that a person can be guilty of distributing methamphetamine, a controlled substance, even if they believed they were distributing cocaine, also a controlled substance." (R&R at 7.)

### b. The Analogue Act

The Analogue Act criminalizes the distribution of certain controlled substance analogues that are not listed on the controlled substance schedules. It "identifies a category of substances substantially similar to those listed on the federal controlled substances schedules, and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law." *McFadden*, 576 U.S. at 188 (citing 21 U.S.C. §§ 802(32)(A), 813). The Analogue Act provides that if an analogue is intended for human consumption, it shall be treated as a

controlled substance "for the purposes of *any* Federal law."  21 U.S.C. § 813(a) (emphasis added).  Because the Analogue Act "extends [the CSA's] framework to analogous substances, the CSA's mental-state requirement applies when the controlled substance is, in fact, an analogue."  *McFadden*, 576 U.S. at 187.  Accordingly, to establish a violation under the Analogue Act, the Government must prove that the defendant "knew that the substance he was distributing is controlled under the CSA or Analogue Act, regardless of whether he knew the substance's identity," or that the defendant "knew the specific analogue he was distributing, even if he did not know its legal status as a controlled substance analogue."  *Id.*  Here, the Government alleges that 4-FA is an analogue of amphetamine under the Analogue Act, with a molecular structure that differs from amphetamine by only a single atom.  (*See* R&R at 8.)

### c.  Analysis

As Magistrate Judge Menendez stated in the R&R, the Government offers three theories for establishing Defendant's "knowledge" under the statutes in question:  (1) Broussard knowingly distributed fentanyl to his customers, resulting in their deaths; (2) Broussard's knowledge can be established through his willful blindness; or (3) Broussard believed he was distributing 4-FA to his customers, and therefore had the requisite degree of intent required by the Analogue Act and *McFadden*.  (*See id*. at 8–9.)  As the magistrate judge observed, the Government will have to prove at trial the required degree of intent required by *McFadden*, and also that 4-FA is, in fact, an analogue.  (*Id.* at 8 n.9.)  But at this stage, the Court reviews whether the allegations in the Indictment, if proven, constitute the crimes alleged.  *See* Fed. R. Crim. P. 7(c)(1).

In general, Broussard argues that the facts alleged in the Indictment fail to sufficiently support the crimes charged and that his prosecution is not based on facts that were properly presented to the grand jury.  (*See* Objs. at 5.)  At most, he contends, the Government may have presented facts to the grand jury supporting the accidental distribution of fentanyl.  (*See id*.)  He acknowledges that the Government's evidence may provide probable cause that he believed he was distributing 4-FA, which appears to be a mere analogue for a controlled substance, but contends that it cannot establish that he had the necessary intent required for the CSA violations alleged in the Indictment.  (*See* R&R at 9) (citing Def.'s Mot. to Dismiss at 4).  Broussard therefore surmises that the Government must have mischaracterized the law on intent or concealed evidence in order for a grand jury to find probable cause to indict him on the instant charges.  (*Id*.; Objs. at 5.)  He also argues that the Government's third theory for establishing guilt constitutes an "infeasible" constructive amendment of the Indictment, as it modifies the offenses charged through "the introduction of elements not originating within the indictment."  (Objs. at 3, 5.)

The Court agrees with the magistrate judge that Broussard's interpretation of the law is incorrect.  As Magistrate Judge Menendez aptly stated, "A person *can* be guilty of a controlled substance crime under the CSA even if they believed they were distributing an analogue rather than a listed drug."  (R&R at 9.)  The Analogue Act provides that an analogue can be treated as a controlled substance for the purposes of "any" federal law,  21 U.S.C. § 813(a).  "Any" federal law includes the CSA.  The CSA's requirement of knowingly distributing a controlled substance is satisfied when the defendant knowingly distributes an analogue to a listed controlled substance. *McFadden*, 576 U.S. at 188–89.  Thus, as stated

in the R&R, a defendant may be found guilty if he had the necessary intent to distribute an analogue, but inadvertently distributed an actual controlled substance instead, just as a defendant may be found guilty of distribution of a controlled substance if he had the necessary intent to distribute it, but inadvertently distributed a different controlled substance.  (R&R at 10.)

In *Sharp*, 879 F.3d at 337, the Eighth Circuit Court of Appeals rejected the same argument that Broussard asserts here, albeit in the context of a motion to withdraw a guilty plea.  The defendant in *Sharp* had argued, unsuccessfully, that because he believed the substance in question was merely an analogue, he lacked the requisite "knowledge" under the CSA for distributing a controlled substance listed on a schedule.  *Id.*  As the court explained,

> [T]he Government needs to establish only general criminal intent to obtain a conviction under Section 841(a).  As we have explained, "The Government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing.  The 'knowingly' element of the offense refers to a general criminal intent, i.e., awareness that the substance possessed was a controlled substance of some kind." *In other words, when the Government proves beyond a reasonable doubt that a defendant believed that a substance was an analogue intended for human consumption, that defendant cannot escape liability because the substance turned out to have been on the controlled substance schedules. The belief that he possessed an analogue establishes the defendant's knowledge.*

*Id.* (quoting *Ramos*, 814 F.3d at 915) (emphasis added).

The Court therefore rejects Broussard's incorrect reading of the law.  While the Government will be put to its burden of proof at trial, the Court finds that the Indictment properly alleges sufficient facts to support the charges against Broussard, as discussed in more detail below.

### 2.   Motions to Dismiss the Indictment

Broussard moves to dismiss the Indictment on several grounds, all of which incorporate his incorrect reading of the law.  The magistrate judge recommended the denial of his Motions to Dismiss.    The Court addresses only the grounds to which Broussard specifically objects.

### a.   Prosecutorial Misconduct Before the Grand Jury

"Where a defendant alleges prosecutorial misconduct, dismissal of the indictment is proper only when the defendant demonstrates flagrant misconduct and substantial prejudice." *United States v. Darden*, 688 F.3d 382, 387 (8th Cir. 2012) (citation and quotation omitted). Because "grand jury proceedings are afforded a strong presumption of regularity," a defendant who "seek[s] to overcome that presumption faces a heavy burden." *United States v. Fenner*, 600 F.3d 1014, 1021 (8th Cir. 2010) (citation omitted).  Even if a defendant can meet that heavy burden, dismissal is an "extreme remedy" and "is inappropriate absent a showing of actual prejudice." *Id*. (citing *United States v. Wilson*, 565 F.3d 1059, 1069–70 (8th Cir. 1986)).

In his Objections, Broussard states that based on the Government's theories of the case, it is "highly likely that the government relied upon the third theory of accidental distribution of fentanyl during the grand jury proceeding."  (Objs. at 5.)  He then speculates that the Government "inevitably present[ed] misinformation that was extremely prejudicial and influential to the grand jury's decision to indict."  (*Id.*)  Broussard posits that his belief is "significantly probable solely based upon most of the documentation created and the oral presentations by the government [minutes ECF #58; #16 and #55], which expressed the

12

*accidental* theory." (*Id.*) (emphasis in original). Also, if the Government relied upon its first or second theories of liability in its presentation of the facts to the grand jury, Broussard contends that "it can be inferred that the grand jury proceeding was plagued with disinformation." (*Id.*)

Magistrate Judge Menendez considered Broussard's arguments, finding that they were based upon a flawed reading of the law. (R&R at 15.) As she observed, and as the Court has discussed, "Under federal law, analogues are themselves treated as controlled substances." (*Id.*) (quoting *Sharp*, 879 F.3d at 337). Because the charges in this case are consistent with the law, Broussard's misreading of the law cannot support a finding of prosecutorial misconduct before the grand jury. If Broussard is challenging whether the Government can *prove* the requisite level of intent under *McFadden*, that is a question for trial, rather than a basis for challenging the Indictment. (*See id.*)

To the extent Broussard alleges prosecutorial misconduct before the grand jury based on the Government's theory of willful blindness, this argument likewise affords him no relief. (*See id.* at 15–16.) As Magistrate Judge Menendez noted, willful blindness is typically not "spelled out in a grand jury indictment." (*Id.* at 16.) Usually, the doctrine is presented in a proposed jury instruction because it provides a means for proving the requisite degree of intent for criminal statutes such as the CSA. (*Id.*) (citing *United States v. Mellor*, 373 Fed. App'x 656 (8th Cir. 2010) (rejecting argument that a willful-blindness jury instruction constructively amended the indictment because "instruction merely provided a means of inferring that knowledge."); *Sharp*, 879 F.3d at 337 (holding that evidence that "there was a high probability that [the defendant believed] the substance was an analogue is sufficient for establishing

willful blindness" because "the Government needs to establish only general criminal intent to obtain a conviction under Section 841(a)."). And if the Government did present the concept of willful blindness to the grand jury, it was free to do so. *See United States v. Platter*, 514 F.3d 782, 787 (8th Cir. 2008) ("Generally, the government is free to prove a defendant's liability for one criminal offense using multiple theories of guilt.") As the magistrate judge correctly noted, an indictment need not make clear the particular theory of liability that the Government will use to establish a particular element of an offense. (R&R at 16) (citing *United States v. Zackery*, 494 F.3d 644, 649 (8th Cir. 2007)).

For all of these reasons, the Court agrees with the magistrate judge's analysis and adopts her recommendation to deny Broussard's Motions to Dismiss the Indictment with respect to Broussard's allegations of misconduct before the grand jury.

### b. Vindictive Prosecution

Another basis on which Broussard moves for dismissal of the Indictment is vindictive prosecution, in violation of his due process rights. He alleges that investigative and prosecutorial coordination between districts, including the District of Minnesota and the Middle District of Pennsylvania was improper, because the prosecutors were aware that he did not know that the substance he sold was fentanyl, and therefore, the charged "federal crime was never allegedly committed." (*See* R&R at 17) (quoting Def.'s Mot. to Dismiss at 18)). Broussard further contends that in this District, the Government brought charges against him as punishment for his failure to plead guilty in Pennsylvania to a global resolution of all federal charges. (*Id*.) Magistrate Judge Menendez rejected these arguments. (*Id*. at 17–19.)

14

In his Objections, Broussard asserts that "there's no doubt" that the Indictment here "was directly consequential to the defendant's multiple refusals of the [Middle District of Pennsylvania] plea deal," and the invocation of his right to trial.  (Objs. at 6.)  He explains, "[T]he punitive motive of the government was *solely* in response to the defendant exercising a legal right.  Whether or not if they were also seeking *justice* is irrelevant; which the  Court may be confusing with *punishment*." (*Id.*) (emphasis in original).  Further, Broussard suggests that "the substantial delay in pursuing the defendant" lends support to his claim that charges were brought in Minnesota to punish him for not entering into a global plea agreement.  (*Id.*)

The Court disagrees.  As the magistrate judge noted, there was no coordinated effort to seek unsupported charges against Broussard because, as the Court has explained, "the charges themselves withstand careful scrutiny."  (R&R at 17.)  Moreover, multiple districts may coordinate their investigation and prosecution of a defendant to share information, avoid redundancy, conserve resources, and avoid unjust results.  (*Id.*) (citing *United States v. Elmardoudi*, 501 F.3d 935 (8th Cir. 2007) (affirming conviction where multiple districts coordinated efforts and attempted to reach global resolution); *United States v. Lucas*, 841 F.3d 796, 804 (8th Cir. 2016) (noting that, with respect to state/federal efforts, caselaw "permits very close coordination in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns.")).

The Court also disagrees with Broussard that charges were brought against him here as punishment for not pleading guilty in Pennsylvania.  "Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right."  *United*

*States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015).  A defendant bears a heavy burden "to show that the prosecution was vindictive, in light of the discretion prosecutors are given in performing their duties."  *United States v. Robinson*, 809 F.3d 991, 1000 (8th Cir. 2016).  In the R&R, the magistrate judge properly observed that charging a defendant with a more serious charge after he declines to plead guilty to a lesser charge, without more, does not violate the Due Process Clause.  (R&R at 18) (citing *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ("[I]n the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."); *United States v. Goodwin*, 457 U.S. 380 (1982) ("[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.")).

Broussard fails to support his assertion that the Minnesota prosecution was brought solely as punishment for his decision to not plead guilty in the Middle District of Pennsylvania.  *Williams*, 793 F.3d at 963.  As set forth in the R&R, the crimes for which Broussard is charged in Minnesota began in 2014 and lasted until December 2016.  (R&R at 19.)  The investigation in Minnesota appears to have begun in 2016, and continued into 2017, if not later.  (*Id*.)  The Minnesota case involves numerous charges related to the deaths of multiple people and a multistate investigation, whereas the Pennsylvania case involved more narrow charges related to a single death.  (*Id*.)  As to Broussard's claim that a "substantial delay in pursuing [him]" supports a finding of vindictive prosecution, the Court disagrees and

addresses Broussard's arguments regarding delay in the context of his claim of a constitutional speedy-trial violation.

In sum, the Court fully agrees with the magistrate judge that there is no basis for dismissal of the Indictment on grounds of vindictive prosecution, and "declines to presume that the prosecutors in Minnesota chose to bring charges against Mr. Broussard, not because his Minnesota crimes allegedly led to the deaths of eleven people around the country, but purely to punish him for exercising his rights in Pennsylvania." (*Id.*) His motion to dismiss on this basis is therefore denied.

### c. Selective Prosecution

Broussard also seeks dismissal of the Indictment on grounds of selective prosecution. He argues that his due process rights were violated through selective prosecution because the Government indicted him, but not D.L.S., a person to whom Broussard allegedly sold fentanyl, and who in turn provided it to his girlfriend, who died after ingesting it. (Def.'s Mot. to Dismiss at 22; *see* Indictment ¶ 3(f).) The magistrate judge denied Broussard's Motion to Dismiss the Indictment on this basis, finding that he failed to show that the Government chose to prosecute Broussard, but not D.L.S., for an improper reason. (R&R at 20.)

A defendant asserting a claim of selective prosecution must demonstrate: "1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." *United States v. Leathers*, 354 F.3d 955, 963 (8th Cir. 2004) (citation omitted). A defendant

bears the burden of proving that the government engaged in selective prosecution. *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004).

While Broussard argues that D.L.S. is no less culpable than he is just because D.L.S. "distributed" the drug to his girlfriend without monetary payment, whereas Broussard received compensation, (Objs. at 6–7), the Indictment makes no such distinction. But there is a significant factual distinction between D.L.S. and Broussard, in that the Indictment alleges that Broussard is responsible for multiple deaths and serious injuries, including the serious injury of D.L.S. (Indictment ¶ 3(a)–(s).) The Court has no other information about D.L.S., nor any evidence to support an inference of discrimination on the part of the Government. In short, the Court agrees with the magistrate judge that Broussard presents no evidence showing that the Government "chose to prosecute Mr. Broussard, who is allegedly responsible for many deaths, instead of D.L.S., who allegedly bears some responsibility for one [death], for an improper reason." (R&R at 20.) Broussard's motion seeking dismissal of the Indictment on this basis is therefore denied.

### 3. Speedy Trial Violation

As noted earlier, in the R&R, Magistrate Judge Menendez found that Broussard's right to a speedy trial had not been violated. (*Id*. at 31–38.) She noted that Broussard asserted a violation of his Fifth Amendment due process rights due to the delay between the dates of the offenses and the filing of the Indictment, and a violation of his Sixth Amendment right to a speedy trial. (*Id*.) Broussard does not claim a speedy trial violation under the Speedy Trial Act, 18 U.S.C. § 3161. (*See* R&R at 31 n.18.)

In his Objections, Broussard raises speedy trial concerns and "prejudicial pre-indictment delay" in the context of his Motions to Dismiss the Indictment. (Objs. at 6–7.) In a single sentence, he states, "The defendant finds it contradictory that the Court would believe that the government would be entitled to the *plea-bargaining* exception of the vindictive prosecution claim in regards to the offered plea deal within the [Middle District of Pennsylvania], but not hold responsibility [*sic*] for the delay in effort to secure such plea deal." (*Id*. at 7) (emphasis in original).

This "objection," in the form of a statement, affords Broussard no relief. As an initial matter, the Court is unaware of any findings in the R&R of a "plea-bargaining exception" to which Broussard refers. The magistrate judge properly observed that the Sixth Amendment guarantees a right to a speedy trial, which attaches at the time of arrest or indictment, whichever is earlier, and continues until the beginning of trial. U.S. Const. amend. VI; *United States v. Flores-Lagonas*, 993 F.3d 550, 563 (8th Cir. 2021). Courts consider four factors in determining whether a violation has occurred: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 420 (1972).

Magistrate Judge Menendez carefully applied these factors under *Barker*. She found that the length of the delay, which at the time of the R&R's filing exceeded 27 months, weighed in Defendant's favor, but that most of the reasons for the delay were not attributable to the Government, either in Pennsylvania or Minnesota. (R&R at 33–36.) As to the delays in Pennsylvania, Magistrate Judge Menendez noted that "the record supports that a combination of delays to which Mr. Broussard agreed to enable plea negotiations, delays

19

requested by the defendant to enable trial and motion preparation, delays related to Mr. Broussard changing counsel, and, to a lesser extent, a delay caused by the death of a judge, were responsible for the passage of approximately four years in Pennsylvania." (*Id.* at 34.) The magistrate judge appropriately gave little weight to Broussard's focus on the Government's "motives," in which he surmised that the delays were "primarily an effort to further coerce a plea agreement." (*Id.* at 34 n.20.)

Magistrate Judge Menendez also correctly cited authority for the proposition that "a delay occasioned by the prosecution of the defendant in another jurisdiction is not a basis for a dismissal on constitutional speedy-trial grounds." (*Id.* at 34) (quoting *United States v. Ellis*, 622 F.3d 784, 791 (8th Cir. 2010) (internal citations omitted)). She found that the proceedings in Minnesota have proceeded in a timely fashion, although the Court has faced a reduced ability to hold court appearances during the global COVID-19 pandemic. (*Id.* at 35–36.) Accordingly, Magistrate Judge Menendez found that consideration of the second *Barker* factor—the reason for the delay—"weigh[ed] strongly against a finding of a constitutional violation." (*Id.* at 36.)

Regarding the final two *Barker* factors, Magistrate Judge Menendez found that Broussard had only recently invoked his right to a speedy trial, which weighed "somewhat against" his Sixth Amendment claim, and that he was unable to demonstrate prejudice, which weighed against a finding of a constitutional violation. (*Id.* at 36–37.)

The Court has fully reviewed the parties' arguments, Defendant's Objections, and the magistrate judge's analysis, and concurs with the magistrate judge. Broussard's objection

based on "Prejudicial Pre-indictment Delay and Speedy Trial Violation" is therefore overruled. His motions seeking dismissal on this basis are therefore denied.

### 4. Remaining Issues

In conclusion, the Court has conducted a careful review of the portions of the R&R to which Broussard objects. Broussard lodges no specific objection to the magistrate judge's recommendation on his Motion to Suppress. To the extent that he objects in general, he simply states in his introductory paragraph, "Defendant relies on his previously submitted Motions for Dismissal, Suppression and Miscellaneous Requests." (Objs. at 1.) Under such circumstances, de novo review is not required, and the Court reviews an R&R for clear error. *See Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (observing that objections to an R&R that "are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review"). The Court finds no clear error in the magistrate judge's analysis of Broussard's suppression motion and agrees with her recommendation. Accordingly, his Motion to Suppress is denied.

### B. Objections to the Order

As noted earlier, Broussard also objects to two of the rulings in the magistrate judge's Order on his non-dispositive motions, (Objs. at 7–8), which the Court addresses below. Because he lodges no objections to any other rulings in the Order, the Court does not address them.

### 1. Motion for Disclosure of *Brady* and *Giglio* Material

Magistrate Judge Menendez denied as moot Broussard's Motion for Disclosure of *Brady* and *Giglio* Material, in which he sought information regarding a Pennsylvania police

officer who is alleged to have engaged in inappropriate and criminal conduct.  (*See* Order at 3.)  The Government represented that the information was not exculpatory because it was irrelevant, and raised additional considerations that might prevent its disclosure.  (*Id.*)  In supplemental briefing on this issue, however, the Government stated that its prior considerations about the disclosure of the information had abated, and it represented that the information had been provided to Broussard.  (*Id.*)  Accordingly, Magistrate Judge Menendez denied his motion as moot.

Regarding Broussard's more general request for material embraced by *Brady*, *Giglio*, and their progeny, Magistrate Judge Menendez ordered the Government to disclose any such information favorable to the defense as soon as it becomes aware of it.  (*Id.*)

In Broussard's Objections, he argues that "the Court fails to acknowledge the inconsistency and contradictory nature of the government's position when discussing this material," and also that the Court "fails to acknowledge that the provided *Brady* material would be insufficient to support a request for dismissal."  (Objs. at 8.)  Neither of these arguments provides a basis for relief, particularly as the Government has provided the requested information, and there is no clear error.  Broussard's Objections are overruled on this basis and this portion of the Order is affirmed.

### 2.  Motion for a Bill of Particulars

Broussard also argues that the magistrate judge erred in denying his Motion for a Bill of Particulars.  He contends that a Bill of Particulars is necessary to "narrow the indictment's vague nature and help the defendant aid with more precision any potential experts he may seek in defense of the government's allegations."  (*Id.* at 9.)  In particular, he asks the

Government to identify the following: (1) the controlled substances for which dibutylone and 4-EMC are the alleged isomers; (2) the controlled substances for which the alleged controlled substance analogues are substantially similar; (3) whether the alleged controlled substance analogues are so defined because of their alleged physiological effects or because Broussard allegedly represented or intended such effects, or both; and (4) "the methodology and basis for such conclusions" that support the Government's responses to these requests. (*Id*. at 8–9.)

In the Order, Magistrate Judge Menendez correctly observed that the purpose of a bill of particulars is to inform the defendant of the nature of the charges against him in order to prepare for trial and to avoid or limit the risk of unfair surprise at trial. (Order at 4–5) (citing *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009)). She further noted that "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." (*Id*. at 5) (quoting *United States v. Morris*, 18 F.3d 562, 568 (8th Cir. 1994)). Magistrate Judge Menendez found that any ambiguity that Brossard attributed to the Indictment was "a product of his incorrect premise that there is a fundamental flaw in the government's theory." (*Id*.) Because the magistrate judge rejected that premise, she determined that the Indictment fully and fairly informed Broussard of the charges against him, and that any arguable lack of information that he might have previously had regarding how the Government intends to prove its case at trial "has been more than corrected by the government's extensive briefing in this case, where it has transparently and in detail described its theory of the case." (*Id*.)

The Court agrees with Magistrate Judge Menendez's analysis of this issue and finds no clear error. Broussard's argument rests upon a misreading of the law, and the Indictment and the Government's filings in this matter sufficiently apprise Broussard of the charges against him and enable him to prepare for trial. *Livingstone*, 576 F.3d at 883. Accordingly, Broussard's objections are overruled with respect to his Motion for a Bill of Particulars and the Order is affirmed.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Objections [Doc. No. 65] are **OVERRULED**;

2. The R&R [Doc. No. 62] is **ADOPTED**;

3. Defendant's Motions to Dismiss the Indictment [Doc. Nos. 5, 6, 9, and 44] are **DENIED**;

4. Defendant's Motion to Suppress [Doc. No. 45] is **DENIED**;

5. The July 13, 2021 Order [Doc. No. 63] is **AFFIRMED**;

6. Defendant's Motion for Disclosure of *Brady* and *Giglio* Material [Doc. Nos. 49] is **DENIED AS MOOT**; and

7. Defendant's Motion for a Bill of Particulars [Doc. No. 51] is **DENIED**.

Dated: September 15, 2021                    s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge