# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AARON RHY BROUSSARD,<br><br>Defendant. | Criminal File No. 19-cr-0101 (SRN/ECW)<br><br>**ORDER** |

Thomas M. Hollenhorst and Melinda A. Williams, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government.

Aaron R. Broussard, SPN #13200, Sherburne County Jail, 13880 Business Center Drive Elk River, MN 55330, pro se Defendant.

Aaron J. Morrison, Wold Morrison Law, Suite 705, 331 Second Avenue South, Minneapolis, MN 55401, stand-by counsel for Mr. Broussard.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on three Motions in Limine [Doc. Nos. 119, 132, 145] filed by Defendant Aaron Broussard. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** these motions.

**I.   BACKGROUND**

Defendant Aaron Broussard is charged in a 17 count Indictment involving unlawful drug importation, possession, and distribution. Specifically, the Government has charged Mr. Broussard with the following: (1) one count of conspiracy; (2) one count of importation of fentanyl; (3) one count of possession with intent to distribute fentanyl; (4) two counts of

1

possession with intent to distribute 2-(ethylamino)-1-phenylhexan-1-one hydrochloride; (5) nine counts of distribution of fentanyl resulting in death; (6) two counts of distribution of fentanyl resulting in serious bodily injury; and (7) one count of distribution of fentanyl resulting in serious bodily injury and death.[1]

Mr. Broussard denies these charges.  He repeatedly contends that he is innocent because the Government is unable to prove the requisite criminal intent under the Controlled Substances Act ("CSA") because there is only evidence that he intended to distribute 4-FA, which appears to be a controlled substance analogue, while there is no evidence that he intended to distribute a controlled substance.  (*See, e.g.*, Doc. Nos. 44 ("Def.'s Mot. & Mem."), 70–75, 121–22.)  Under this theory, Mr. Broussard has alleged prosecutorial misconduct during the grand jury proceedings, vindictive prosecution, constructive amendment, selective prosecution, and outrageous government conduct.  (*See generally* Def.'s Mot. & Mem.; Objs. [Doc. No. 65].)

This Court has ruled that Mr. Broussard's legal interpretation is contrary to law. (Order Adopting R&R & Affirming Order [Doc. No. 69] ("Order Adopting R&R") at 10–11.)  Specifically, the Court has explained that "a defendant may be found guilty if he had the necessary intent to distribute an analogue, but inadvertently distributed an actual

---

[1] The Government originally filed a 21 count Indictment [Doc. No. 1].  The Government then moved to dismiss counts 16, 17, and 18 [Doc. No. 135], which the Court granted [Doc. No. 153].  In that order, the Cout also granted the Government's request to renumber the Indictment to reflect the dismissal (i.e., renumber counts 19, 20, and 21 as counts 16, 17, and 18, respectively).  Since that time, the Government moved to dismiss the newly renumbered Count 18 [Doc. No. 162] to which Mr. Broussard has no objection. The charges outlined above reflect these dismissals.

controlled substance instead." (*Id.* at 11.) The Court has also ruled that Mr. Broussard's other arguments are meritless. (*Id.* 12–18.)

Mr. Broussard now seeks an order from the Court barring the Government from introducing a variety of evidence relating to the charges.

## II.  DISCUSSION

### A.  Legal Standard

A motion in limine refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Motion in Limine*, Black's Law Dictionary (11th ed. 2019) (defining "motion in limine" as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial"). The district court has discretion when ruling on motions in limine. *United States v. Lasley*, 917 F.3d 661, 665 (8th Cir. 2019).

### B.  Mr. Broussard's Motions in Limine

Mr. Broussard has filed three motions in limine.[2] Each is considered in turn.

#### 1.  The First Motion in Limine [Doc. No 119]

The first motion in limine seeks to prohibit the Government from describing 4-FA as "a controlled substance analogue, controlled substance, drug, illegal or any other term implying illegality or criminality," and from presenting evidence about "4-FA's similarity

---

[2]  Under the Second Amended Trial Notice and Final Pretrial Order [Doc. No 98] the parties were required to file motions in limine "no later than 12:00 noon on Friday, February 11, 2022." The Court considers Mr. Broussard's second and third motions in limine even though they were untimely filed.

to a controlled substance" and "defendant's intent for it to be consumed," alleging that doing so would constructively amend the Indictment. (First Mot. Limine at 5.) The Government opposes this motion in limine. (Gov't Opp'n [Doc. No. 139] at 2.)

Under the CSA, it is a crime to knowingly manufacture, distribute, or possess with intent to distribute controlled substances. 21 U.S.C. § 841(a)(1). The Analogue Act "extends [the CSA's] framework to analogous substances." *United States v. McFadden*, 576 U.S. 186, 187 (2015). Specifically, it "identifies a category of substances substantially similar to those listed on the federal controlled substances schedules, and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law." *McFadden v. United States*, 576 U.S. 186, 188 (2015) (citing 21 U.S.C. §§ 802(32)(A), 813).

In *McFadden*, the Supreme Court addressed the knowledge necessary for conviction under § 841(a)(1) when the controlled substance is an analogue. 576 U.S. at 194–95. As the Supreme Court explained, the Government may establish that a defendant knowingly distributed a controlled substance analogue in either of two ways: (1) by demonstrating that the "defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance"; or (2) by satisfying a two-part test to prove that the defendant: (a) knew that the analogue in question had a chemical structure substantially similar to a controlled substance; and (b) had similar effects to a controlled substance or the defendant represented

4

or intended it to have those effects. *McFadden*, 576 U.S. at 194–95; *see also United States v. Carlson*, 810 F.3d 544, 550 (8th Cir. 2016).

The Court finds that testimony and other evidence related to 4-FA is clearly relevant to the Government's case. *See, e.g.*, *United States v. McKinney*, 79 F.3d 105, 107 (8th Cir. 1996) (affirming the admission of evidence in Analogue Act case from expert witnesses and users of the analogue drugs and related drugs that the analogues were similar to certain controlled substances in both chemical structure and effect), *vacated on other grounds*, 520 U.S. 1226 (1997); *United States v. Lane*, 616 F. App'x 328, 329 (9th Cir. 2015) (finding no abuse of discretion in permitting drug users to compare their experiences with the alleged analogue drugs and common illegal stimulants in prosecution under the Analogue Act). Accordingly, the Court denies Defendant's motion in limine.

### 2. The Second Motion in Limine [Doc. No. 132]

Mr. Broussard's second motion in limine seeks to bar the government from presenting (1) "evidence associated with uncharged conduct," including people not named in the Indictment; (2) witnesses whose testimony has no probative value, including testimony regarding "how the deaths or injuries of the alleged victims influenced personal experiences"; and (3) evidence of, and testimony about, the shipping records and other similar records from the United States Postal Service ("USPS"). (Def.'s Second Mot. Limine at 1–2.) The Court considers each type of evidence below.

#### a. Evidence relating to victims not named in the Indictment

The Government clarifies that the "uncharged conduct" referenced by Mr. Broussard most likely refers to two witnesses, Victims C and M, who are not mentioned in

5

the Indictment. (Gov't Opp'n at 2–4.) The Government argues that the evidence relating to these witnesses is intrinsic evidence because it is inextricably intertwined with the evidence of the charged conduct. (*Id.*) The Court agrees that the evidence of these witnesses is intrinsic evidence.

Courts distinguish between intrinsic evidence and extrinsic evidence. *See United States v. Buckner*, 868 F.3d 684, 687–88 (8th Cir. 2017). Rule 404(b), which applies only to extrinsic evidence, provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, such evidence may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

Intrinsic evidence, which is not governed by Rule 404(b), is evidence of wrongful conduct that "is offered for the purpose of providing the context in which the charged crime occurred." *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006). It "includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely 'completes the story' or provides context to the charged crime." *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019) (internal quotation marks and citation omitted). Unlike extrinsic evidence admitted under Rule 404(b), pertaining to distinct prior acts, intrinsic evidence relates to crimes that are "so blended or connected with the one[s] on trial" that "proof of one incidentally involve[s] the other[s]." *United States v. Luna*, 94 F.3d 1156, 1162 (8th Cir. 1996) (alterations in original) (internal quotation marks omitted). The Eighth Circuit has held that drug transactions that occur prior to or during the charged

6

distributions constitute intrinsic evidence. *United States v. Thomas*, 760 F.3d 879 (8th Cir. 2014) (affirming that crack-distribution evidence was intrinsic because it was "blended" with the heroin conspiracy); *Guzman*, 926 F.3d at 1000 (affirming that evidence relating to marijuana was intrinsic to the methamphetamine conspiracy); *United States v. Washington*, 596 F.3d 926, 946 (8th Cir. 2010) (affirming the admission of testimony of three witnesses about their drug dealings with the defendant as intrinsic evidence).

Here, Victims C and M provide intrinsic evidence. As in *Thomas*, the evidence that Victims C and M ordered 4-FA from PlantFoodUSA, received envelopes from Friendly Delivery, and then suffered near-fatal fentanyl overdoses, is an integral part of the operative facts of the crime charged. Moreover, like the marijuana in *Guzman*, the victims' testimonies are inextricably intertwined with the fentanyl conspiracy. Furthermore, as explained in *Washington*, the intrinsic evidence of Victims C and M provides context in which the charged crimes occurred and helps to complete the story.[3] Accordingly, the Court denies the motion in limine to exclude Victims C and M.

---

[3] To the extent Mr. Broussard seeks to exclude other evidence relating to "uncharged conduct," the Court denies the motion in limine as too vague to make a determination at this time. *See United States v. Head*, Crim. No. 08-CR-116 KJM, 2013 WL 5739095, at *4 (E.D. Cal. Oct. 22, 2013) (denying motion in limine because "[t]he court declines to grant this request as too vague and unsupported").
In addition, to the extent Mr. Broussard argues that Victim C was untimely disclosed, the Court denies the motion. The government did not violate any general rule of discovery or any specific discovery order by the district court; in fact, Victim C was included in the Government's timely-filed witness list.

### b. "Spark of life" evidence

Without citing specific evidence, Mr. Broussard generally seeks to bar the Government from presenting evidence regarding the victims' deaths or injuries that seeks to inflame the jury, on the grounds that the evidence is unfairly prejudicial. (Def.'s Second Mot. Limine at 1–2.) The Government assumes that Mr. Broussard is referring to "spark of life" evidence. (Gov't Opp'n at 4.)

"Spark of life" evidence is evidence of "limited biographical information about a victim to present the victim as a human being." *Evans v. King*, Civ. No. 10-4045 (SRN/SER), 2011 WL 3837090, at *2 n.3 (D. Minn. July 29, 2011) (citing *State v. Graham,* 371 N.W.2d 204, 207 (Minn. 1985)), *R. & R. adopted*, 2011 WL 3837086 (D. Minn. Aug. 29, 2011).) Minnesota courts permit such evidence in criminal prosecutions "as long as it does not invoke undue sympathy for the victim or inflame the jury." *Id.* (citing *State v. Morton,* 701 N.W.2d 225, 236–37 (Minn. 2005)).

Here, the Government appreciates Mr. Broussard's concern and explains that it intends to limit such evidence. In particular, the Government intends to introduce "a single photograph of each deceased victim (depicted as a live adult)" and plans to call "a family member to establish that, prior to the victim's death, the victim was a vibrant and healthy human being." (*Id.*) The Court finds that this limited evidence likely falls within the purview of admissible evidence under "spark of life" jurisprudence. *See, e.g.*, *Morton*, 701 N.W.2d at 237 (holding that photographs of the victim "in life and death, as well as the discussion of her life" were permissible spark of life evidence). Nonetheless, Mr.

Broussard is free to object if he believes the evidence is unnecessarily prejudicial. Accordingly, the Court denies this motion in limine without prejudice.

### c.      United States Postal Service records

Mr. Broussard seeks to exclude evidence from USPS, including shipping and other similar records, and testimony relating to it. (Def.'s Second Mot. Lim. at 2.) He alleges that these records are hearsay, along with being irrelevant and unfairly prejudicial. (*Id.*) The Government argues that this evidence is highly relevant to their case, and is admissible. (Gov't Opp'n at 4–5.)

Federal Rule of Evidence 803(6) allows the introduction of business records "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record." *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 921 (8th Cir. 2013) (quoting Fed. R. Evid. 803(6)) (affirming trial court's ruling that certain documents were business records). To establish that these conditions are met, the party introducing the records must admit "testimony of the custodian or another qualified witness," or "a certification that complies with Rule 902(11) or (12)." Fed. R. Evid. 803(6)(D).

Mr. Broussard alleges that the post office records were created for trial and are therefore not business records. (Def.'s Second Mot. Limine at 2.) However, he provides no evidence to support this allegation. These postal records do appear to be "kept in the course of a regularly scheduled business activity" and therefore constitute admissible business records. *See United States v. Franks*, 939 F.2d 600, 601 (8th Cir. 1991) (affirming

9

trial court's ruling admitting federal express records as business records under Rule 803(6)); *United States v. Jenkins*, 345 F.3d 928, 935–36 (6th Cir. 2003) (affirming trial court ruling admitting post office labels as business records under Rule 803(6)).

There is no evidence in the record that the postal records the Government seeks to introduce were not kept in the ordinary course of business. And as business records, these exhibits are admissible if the Government can establish their authenticity through testimony, or a certification that complies with Rule 902(11) or (12). *See* Fed. R. Evid. 803(6); *see e.g.*, *Jenkins*, 345 F.3d at 931, 935–36 (admitting exhibits that were introduced with testimony from an "otherwise qualified witness," a United States Postal Inspector). Mr. Broussard may object at trial if the Government fails to properly authenticate these records; however, at this time, the Court denies his motion in limine to exclude all evidence of USPS shipping records, similar records, and testimony.

### 3. The Third Motion in Limine [Doc. No. 145]

The third motion in limine seeks to bar many different types of evidence. Each is considered separately.

#### a. Overdoses by victims not mentioned in the Indictment, including testimony by Victims C and M

Mr. Broussard does not identify any witnesses, other than Victims C and M, to which this motion relates. Accordingly, the Court denies this motion because the evidence is intrinsic to the activity of the case, as explained above.

### b.  "WCEC Environmental Consultants" and apartment mitigation

At the pretrial conference, the Government indicated that it did not intend to introduce evidence relating to the environmental inspection and mitigation of Mr. Broussard's apartment.  Accordingly, the Court denies this motion as moot.

### c.  USPS records and testimony that may be unfairly prejudicial

Because he does not direct the Court to other specific evidence, the Court concludes that Mr. Broussard seeks to exclude the same USPS records and "spark of life" evidence that he sought to exclude in his Second Motion in Limine.  For the reasons outlined above, the Court denies these motions in limine.

### d.  Crime scene and victim photos

Mr. Broussard seeks to exclude any "grotesque crime scene photos" as lacking probative value.  (Def.'s Third Mot. Limine at 3.)  He also seeks to exclude victim photos, asserting that they are irrelevant and lack probative value.  (*Id.* at 3–4.)

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Here, the Indictment alleges twelve counts relating to serious bodily injury or death from consuming fentanyl.  At the pretrial conference, the Government indicated that it plans to submit crime scene or victim photographs only to the extent necessary to establish that fentanyl caused these deaths, including, to the extent necessary, photographs relied on by medical examiners.  The Government noted that, if Defendant agreed to stipulate that

11

each victim died from fentanyl, then it would not need to introduce these photographs. However, Mr. Broussard declined to stipulate. These photographs are certainly relevant, but Mr. Broussard is free to object at trial if he believes they are unnecessarily cumulative. To the extent that Mr. Broussard seeks to raise Rule 403 objections to this evidence, the Court will rule on those objections when raised at trial.

### e. Mr. Broussard's iPhone 6

Mr. Broussard seeks to exclude electronic evidence from his iPhone 6 as irrelevant and unfairly prejudicial. (Def.'s Third Mot. Limine at 4.) The Government plans to introduce text messages between Mr. Broussard and third parties which document sales of Percocet and discussions regarding the sale of 4-FA. The Government also plans to introduce Mr. Broussard's internet search history, including a search of a StarTribune news article about a defendant charged with murder for distributing fentanyl. The Government further plans to introduce photographs stored on Mr. Broussard's iPhone. As explained above, only relevant evidence is admissible. Fed. R. Evid. 402. Here, the Government must prove beyond a reasonable doubt that Mr. Broussard knew that he was selling fentanyl or that knew that he was selling 4-FA. As it relates to 4-FA, the Government must prove that it is a controlled substance analogue that Mr. Broussard intended for human consumption. The Court finds at this time that the challenged evidence is helpful to the factfinder to determine whether the Government has met its burden. Thus, the Court denies this motion. To the extent that Mr. Broussard seeks to raise Rule 403 objections to this evidence, the Court will rule on those objections when made at trial.

### f. Victim G's written statement to the Scranton Police Department

Mr. Broussard seeks to exclude Victim G's statement to the Scranton Police Department, asserting that it is hearsay and thus violates his Sixth Amendment confrontation rights. (Third Mot. Limine at 4–5.)

The Confrontation Clause of the Sixth Amendment provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Crawford v. Washington,* 541 U.S. 26, 42 (2004) (quoting U.S. Const. amend. VI). The Confrontation Clause bars the admission of a witness's out-of-court testimonial statement unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness. *Id.* at 59. This right applies only to testimonial hearsay statements, thus, "in order to fall within the purview of the Confrontation Clause, the evidence not only must be testimonial but also must be offered for the truth of the matter asserted." *United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014) (citations omitted). If the underlying statement is testimonial but not hearsay, it can be admitted without violating the defendant's Sixth Amendment rights. *Crawford,* 541 U.S. at 59 n. 9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

The "right to confrontation is a *trial* right." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (emphasis in original); *see Williams v. Illinois*, 567 U.S. 50, 64–65 (2012) (noting *Crawford* held that the confrontation right applied to testimonial statements of

13

witnesses absent from *trial*).  Mr. Broussard is free to object at trial if the Government fails to lay the proper foundation for this evidence under the law.

### g.    Photographs of Mr. Broussard's grandmother and her residence

Mr. Broussard seeks to bar the Government from introducing photographs of Gloria Broussard, the Defendant's grandmother, and her home, asserting that "[d]ocumentation of the residence's address should be sufficient to the government's argument."  (Def.'s Third Mot. Limine at 5.)  When proving its case, the Government is entitled to use " 'evidence of its own choice,' " and " 'a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.' " *United States v. McCourt*, 468 F.3d 1088, 1091 (8th Cir. 2006) (quoting *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997)).  Accordingly, the Court denies this motion in limine without prejudice.

### h.    Summary charts

Mr. Broussard asks the Court to bar the Government from using summary charts. (Def.'s Third Mot. Limine at 6.)  As explained at the pretrial conference, when Mr. Broussard filed this motion, he had not yet reviewed the summary charts.

However, after reviewing the summary charts, Mr. Broussard may raise substantive objections about the contents of the summary charts or whether they fairly depict the underlying documents.  *United States v. Jennings*, 724 F.2d 436, 441 (5th Cir. 1984) ("Recognizing the possibility for misuse of summary charts . . . a trial judge must carefully handle their preparation and use."); *United States v. Malik*, 424 F. App'x 122, 128 (3d Cir.

2011) ("To have a summary admitted, the proponent of a summary must lay a proper foundation and show that the summation is accurate."). If Mr. Broussard raises specific objections at trial, the Court will rule on them.

### i. Internet archive evidence

Mr. Broussard seeks to exclude his internet archive evidence as "lack[ing] the necessary declarations of authenticity." (Third Mot. Limine at 6.)

Federal Rule of Evidence 901 prescribes the process for evidentiary authentication. Under Rule 901, in order "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). However, some items "are self-authenticating," meaning "they require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. Included in this category of self-authenticating evidence is "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)." Fed. R. Evid. 902(14).

Here, the Government seeks to introduce internet archive evidence. If the Government lays the proper foundation, this evidence is admissible. *See, e.g., United States v. Gasperini*, 894 F.3d 482, 489–90 (2d Cir. 2018) (affirming district court's admission of internet archive evidence when Government laid proper foundation); *United States v. Bansal*, 663 F.3d 634, 667–68 (3d Cir. 2011) (same). The Court cannot at this time resolve the evidentiary authentication question, and, therefore, the Court denies the

motion without prejudice. However, the Defendant is free to challenge this evidence at trial.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion in Limine [Doc. No 119] is **DENIED**;

2. Defendant's Motion in Limine [Doc. No 132] is **DENIED** in part and **DENIED** in part without prejudice; and

3. Defendant's Motion in Limine [Doc. No. 145] is **DENIED** in part and **DENIED** in part without prejudice.

Dated: March 9, 2022                                  s/ Susan Richard Nelson
                                                                    SUSAN RICHARD NELSON
                                                                    United States District Judge