UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AARON RHY BROUSSARD,<br><br>Defendant. | Criminal File No. 19-cr-0101 (SRN/ECW)<br><br><br>**ORDER** |

Thomas M. Hollenhorst and Melinda A. Williams, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government.

Aaron J. Morrison, Wold Morrison Law, Suite 705, 331 Second Avenue South, Minneapolis, MN 55401, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's Motion in Limine [Doc. No. 177] to exclude coconspirator statements. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** the motion.

**I.  BACKGROUND**

The Government recently shared the PowerPoint presentation that it plans to use during its opening statement. (*See* Def.'s Mot. & Mem [Doc. No. 177] at 1.) That presentation includes proposed Government Exhibit Z-29, which consists of e-mail communications between Mr. Broussard and "Grace," an employee of Topkey

1

Pharmaceutical Chemica Co., Ltd., which is a chemical factory located in China.[1] (Ex. Z-6; Def.'s Mot. & Mem. at 1.)  Defendant contends that Grace's statements in that e-mail conversation, which is outlined below, are inadmissible hearsay:

> **Defendant**: & is there a replacement for 2fa or 2fma?
>
> **Grace**: we don't have the 2-fa and 2-fma, and there is also don't have the new replacement produced.  [J]ust find another plant can suply [sic] the old 4-fa . . . so will you interested in the 4-fa?
>
> **Defendant**: yes what would be the cost for 4fa?
>
> **Grace**: the 4-fa price is 4500usd/kg, including the shipping fee!!!
>
> **Defendant**: I will need 100 to 250g.

(Ex. Z-29; Def.'s Mot. & Mem. at 1.)

Defendant subsequently filed this motion in limine to exclude Grace's statements in Z-29, along with Grace's statements in Exhibits Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44. (Def.'s Mot. & Mem. at 1.)  The Government argues that Grace's statements are not hearsay under Federal Rule of Evidence 801(d)(2)(E) because they are statements of a coconspirator in furtherance of a conspiracy.  (Gov't Opp'n [Doc. No. 184] at 7.)

## II. DISCUSSION

Out-of-court statements made by a defendant's coconspirator are not hearsay when offered against the defendant, so long as the statements were made "during and in

---

[1] The relevant e-mail communications are between Mr. Broussard and an unidentified coconspirator who used the e-mail addresses of "grace@topkeychem.com" and "info@topkeychem.com." (*See, e.g.*, Exs. Z-28, Z-43.)  The signature lines identify the alleged coconspirator as "Grace," "Susan," and "John."  (*See* Exs. Z-20, Z-26, Z-43.)  For clarity, the Court refers to the coconspirator as "Grace."

2

furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit such statements "[t]he government must prove by a preponderance of the evidence that: 1) the conspiracy existed; 2) the defendant and the declarant were members of the conspiracy; and 3) the statement was in furtherance of the conspiracy." *United States v. Sturdivant*, 513 F.3d 795, 802 (8th Cir. 2008).

The Eighth Circuit offers guidance on the procedure a district court can employ to address Rule 801(d)(2)(E):

> If the prosecutor propounds a question which obviously requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant, may conditionally admit the statement. At the same time, the court should, on the record, caution the parties (a) that the statement is being admitted subject to defendant's objection; (b) that the government will be required to prove by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy; (c) that at the conclusion of all the evidence the court will make an explicit determination for the record regarding the admissibility of the statement; and (d) that if the court determines that the government has failed to carry the burden delineated in (b) above, the court will, upon appropriate motion, declare a mistrial, unless a cautionary instruction to the jury to disregard the statement would suffice to cure any prejudice. The foregoing procedural steps should transpire out of the hearing of the jury.

*United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978) (citations omitted). Other circuits employ procedures that assess the admissibility of coconspirator statements before they are presented to the jury. *See United States v. DuFriend*, 691 F.2d 948, 951 (10th Cir. 1982) ("We also recommended that, whenever possible, the prosecution first introduce its independent proof of the conspiracy and the defendant's connection thereto before admitting hearsay declarations of co-conspirators."); *United States v. Grassi*, 616 F. 2d 1295, 1300 (5th Cir. 1980) (requiring that district courts hold a hearing to determine the

3

admissibility of out-of-court coconspirator statements under Rule 801(d)(2)(E)); *United States v. Howard*, 706 F.2d 267, 270–71 (8th Cir. 1983) (McMillian, J. concurring) (acknowledging the procedure in *Bell*, but strongly recommending that district courts hold "pre-trial hearings to determine the admissibility of a putative co-conspirator's hearsay declaration").

The Government, as the proponent of the coconspirator statements, bears the burden of establishing their admissibility under Rule 801(d)(2)(E). According to *Bell*, the Government may have these statements conditionally admitted at trial, but risks them being struck, having a limiting instruction imposed, or even a mistrial declared if it ultimately fails to meet its burden to show that the statements were made during and in furtherance of the conspiracy. Alternatively, the Government may request—before seeking to admit any of the coconspirator's statements—a hearing wherein it offers evidence (or points to evidence already admitted) to satisfy its burden and the Court will make the required Rule 801(d)(2)(E) ruling.

Here, the Government has pursued the latter option, offering Exhibit Z, including Exhibits Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44, into evidence. Defendant does not object to his statements in those e-mail communications, nor could he because his statements are admissible as an opposing party's statement under Rule 801(d)(2)(A). Accordingly, the Court admits Mr. Broussard's statements in Exhibits Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44.

The Supreme Court has held that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be

4

admitted." *Bourjaily v. U.S.*, 483 U.S. 171, 181 (1987).  Here, the hearsay statements are Grace's statements in those e-mail communications.  Accordingly, the Court can consider Mr. Broussard's statements, which the Court admitted above, and Grace's statements, which the Government offers for admission, to determine whether the Government has met its burden.

To establish that a conspiracy exists, "the government must show an agreement between at least two people and that the agreement's objective was a violation of the law." *United States v. Escobar*, 50 F.3d 1414, 1419 (8th Cir. 1995).  The agreement can be a "tacit understanding, rather than a formal agreement."  *Mickelson*, 378 F.3d at 821.  Because conspiracies are usually secret, the "evidence in a conspiracy case will often be circumstantial." *United States v. Oleson*, 310 F.3d 1085, 1089 (8th Cir. 2002).

The Court has considered the communications between Mr. Broussard and Grace in Exhibits Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44, and finds that the Government has met its burden of proof, by a preponderance of the evidence, that there was a conspiracy between "Grace" (i.e., the supplier) and Mr. Broussard (i.e., the distributor) to distribute illegal drugs in the United States.  These exhibits shows that Grace and Mr. Broussard exchanged more than 60 e-mail communications over the course of 17 months, facilitating the sale of more than 2000 grams of five different types of drugs.  (*See, e.g.*, Exs. Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44.)  This is enough to establish that a conspiracy existed by a preponderance of the evidence.[2]

---

[2] The Court also finds that Grace's at-issue statements were in furtherance of the conspiracy.  Courts in this circuit have found that negotiations relating to drug sales

5

Accordingly, the Court admits Grace's statements in Exhibits Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44.

But Defendant asserts that this was merely a buyer-seller relationship, which is not enough to establish a conspiracy, citing *United States v. Prieskorn*, 658 F.2d 631, 636 (8th Cir. 1981).  The Court disagrees.

The e-mail communications between Grace and Mr. Broussard demonstrate that this was more than a buyer-seller relationship.  For example, Grace and Mr. Broussard discuss mislabeling the packages to avoid detection by customs, as outlined below:

> **Defendant**: [I am interested in] 2fma, 2fa, eph, 4homipt, 3meopcp. 100 grams – kilo[.] How is your stealth shipping? I like my packages very discreet.
>
> . . . .
>
> **Grace**: We usually write on shipment paper different name, and les [sic] to make clear customs more easy.[ S]o you don't too worry about this problem.
>
> . . . .
>
> **Defendant**: send me your bitcoin address & the names you mentioned in a previous email are controlled substances here, so don't let that be a issue with the packaging.
>
> **Grace**: . . . we will writen [sic] 4-Aminosalicylic Acid . . . Fumaric acid . . . on the label.

---

constitute "overt acts taken in furtherance of the conspiracy." *United States v. Sweeney*, 817 F.2d 1323, 1326 (8th Cir. 1987).  Conversations among coconspirators discussing the conspiracy can also be in furtherance of the conspiracy.  *United States v. Johnson*, 925 F.2d 1115, 1117 (8th Cir. 1991) (finding coconspirators taped conversations were in furtherance of the conspiracy because "[t]hese discussions gave at least some indication that [non-defendant coconspirator] had some past or present connection to Johnson's activities, and the details relate to an ongoing conspiracy").

> **Defendant**: 4-Aminosalicylic acid is a prescription drug here. My other supplier seals their products in face mask/wash packaging. Would you possibly look into doing something of that nature?
>
> **Grace**: . . . [W]e also can use junk food packing to package it. [W]hat do you think of this way?
>
> **Defendant**: That would be great, will send payment now.

(Exs. Z-17, Z-18.) These secrecy efforts are a strong indication that this was a conspiracy. *See Oleson*, 310 F.3d at 1089 (noting that conspiracies have a "necessary aspect of secrecy" (internal quotation marks omitted)).

Courts also find that "evidence of multiple transactions is evidence of a conspiracy," especially when the transactions "involve[] large quantities of drugs." *United States v. Rodriguez*, 984 F.3d 704, 709 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 725 (2021). Here, Grace and Mr. Broussard engaged in at least six distinct transactions for more than 2000 grams of drugs. (*See* Exs. Z-17, Z-18, Z-28, Z-32, Z-43, Z-44.) These transactions were in addition to Mr. Broussard's drug purchases from other suppliers, which Grace knew about, (Ex. Z-18 ("It's true that your current suppliers is [sic] cheaper than me, of course, because you already their customers [sic].").) Such large amounts of drugs purchased in a series of transactions is compelling circumstantial evidence that this was not merely a buyer-seller relationship.

Moreover, Grace's knowledge of Mr. Broussard's drug *business* further demonstrates the existence of the conspiracy. For example, Grace explicitly referenced Mr. Broussard's business. (*See, e.g.*, Ex. Z-26 ("Hello Aaron . . . how was your break form [sic] your business? . . . [H]ope your life and business are all goes well all the time!"). And

7

when Mr. Broussard shared that he was "getting complaints that [the drugs he ordered] may not be 4fa or it's tainted/mixed with another chem," Grace acknowledged those customer complaints, "ohoh, OKK, it is really not good, I am sorry!" (Z-32.) Grace further suggested that Mr. Broussard "do a sample to test the quality at first." (Z-28.) Knowing that Mr. Broussard runs a drug business, along with knowing the quantity of drugs ordered by Mr. Broussard, establishes a presumption of knowledge of the conspiracy. *See United States v. Yellow Horse*, 774 F.3d 493, 497 (8th Cir. 2014) ("Given evidence of Yellow Horse's knowledge of the drug business generally and Romero's operations specifically, his argument that his minor role and Romero's secretiveness kept him from understanding the conspiracy's scope is unpersuasive.").

Furthermore, Grace and Mr. Broussard had an ongoing relationship. The Eighth Circuit has explained that "[t]he existence of a conspiracy is also shown through evidence of an ongoing relationship the purpose of which is buying and selling drugs." *United States v. Moya*, 690 F.3d 944, 949 (8th Cir. 2012). Here, both Grace and Mr. Broussard acknowledged their ongoing business relationship. For example, Mr. Broussard expressed his gratitude for their "great business relationship," and describes himself as "a long time customer." (Exs. Z-26, Z-43.) Grace also acknowledged their ongoing business relationship. (*See* Ex. Z-26 (expressing a desire to "continue our business like before," and then after receiving a new order, stating that she was "looking forward to our contiune [sic] business!").) And no one disputes that the purpose of their ongoing business relationship was to buy and sell drugs.

Notably, the case Defendant cites in support of its motion, *Prieskorn*, confirms the Court's finding that the circumstantial evidence in this case establishes that a conspiracy existed.  In *Prieskorn*, the Eighth Circuit affirmed the jury's finding of a conspiracy, explaining that the quantity of drugs and the evidence of an ongoing relationship was enough for the jury to find a conspiracy.  658 F.2d at 634–35 ("The large quantity of cocaine involved here supports an inference or presumption that appellant knew that he was a part of a venture which extend(ed) beyond his individual participation." (footnote and internal quotation marks omitted)).  Although the Eighth Circuit noted that a buyer-seller relationship involving a single sale of "small amounts of drugs consistent with personal use" usually does not support a conspiracy conviction, the court found that rule of law irrelevant.  *Id.* at 634 ("Here there was ample evidence in the record to establish both appellant's knowledge of the conspiracy's general purpose and scope and his knowing participation in it.").

As in *Prieskorn*, the large quantity of drugs purchased by Mr. Broussard from Grace, in addition to their ongoing relationship, establishes that Grace knew the conspiracy's general purpose and her participation in it.  Accordingly, the Court denies Defendant's motion to exclude the at-issue statements in Exhibit Z-29.[3]

---

[3]   The Government also argues that the statements in Z-29 are not hearsay because they are not offered for the truth of the matter asserted, arguing that they are offered to show their effect on the listener. (Gov't Opp'n at 7, 10–11.)  "[A] statement offered to show its effect on the listener is not hearsay." *United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014) (alteration in original) (internal quotation marks and citation omitted). Here, Grace's statements are not hearsay because they are offered for their effect on Defendant.  For example, the Government does not offer the statement "the 4-fa price is 4500usd/kg, including the shipping fee!!!" for the truth of the matter asserted. (Ex. Z-29.)

### III.  CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion in Limine [Doc. No. 177] is **DENIED**; and

2. Exhibits Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44 are **RECEIVED** into evidence.

Dated: March 21, 2022

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

Instead, they want to show the effect this statement had on Mr. Broussard, namely his response, "[I] will need 100 to 250g." (*Id.*)  Accordingly, Grace's statements in Z-29 are also admissible because they are not offered for the truth of the matter asserted and thus not hearsay.