# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Crim. No. 19-101 (SRN/ECW)** |
| **Plaintiff,** | |
| **v.** | **AMENDED ORDER** |
| **Aaron Rhy Broussard,** | |
| **Defendant/Petitioner** | |

---

Katharine T. Buzicky, Office of the U.S. Attorney, 316 N. Robert St., Ste. 404, Saint Paul, MN 55101; Melinda A. Williams and Thomas M. Hollenhorst, Office of the U.S. Attorney, 300 S. 4th St., Ste. 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Aaron Rhy Broussard, Reg. No. 20944-041, USP-McCreary, Unit 1B, P.O. Box 3000, Pine Knot, KY 42635, Pro Se Defendant/Petitioner

---

SUSAN RICHARD NELSON, United States District Judge

Pending before the Court are Pro Se Defendant[1] Aaron Rhy Broussard's Motion to Vacate Under 28 U.S.C. § 2255 ("2255 Motion") [Doc. No. 414]; Motion for Stay and Release Pending Disposition of Motion to Vacate, for Leave to Expand the Record, and for Production of Transcripts [Doc. No. 415]; and Motion for Leave to File Continuation of 2255 Memorandum [Doc. No. 421].

---

[1]     Although Broussard is the "petitioner" in this habeas proceeding, because all filings are made in the underlying criminal case, the Court will refer to him as "defendant."

Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies Broussard's motions, and denies an evidentiary hearing and certificate of appealability.

## I.     BACKGROUND

In April 2019, Broussard was charged in a multi-count Indictment with conspiracy involving the importation, possession, and distribution of controlled substances and controlled substance analogues.  (Indictment, Count 1 [Doc. No. 1].)  The Indictment alleged that as part of his internet drug business, Broussard had advertised the sale of 4-Fluoroamphetamine ("4-FA"), a drug similar to the prescription drug Adderall, but instead shipped his customers pure fentanyl, a powerful narcotic.  (*Id*.)  After Broussard's customers ingested fentanyl, 11 died and others suffered serious bodily injuries.  (*Id*.)

During the pretrial proceedings, Broussard generally represented himself. However, as his case neared the trial date, he permitted standby counsel, Aaron J. Morrison, to represent him.  (*See* Mar. 14, 2022 Minute Entry [Doc. No. 174].)

In March 2022, a jury convicted Broussard of conspiracy and sixteen other drug-related counts concerning the importation, possession, and distribution of fentanyl that led to the deaths and serious bodily injuries of customers of his internet drug business from March through May of 2016.   (Redacted Jury Verdict [Doc. No. 201].)  The jury found that Broussard's actions led to the deaths of 11 customers and seriously injured four others. (*Id*. at 3–7.)

After trial, following a *Faretta* hearing, Broussard chose to represent himself at the sentencing stage.  (*See* Aug. 2, 2022 Minute Entry [Doc. No. 248].)  Before sentencing, the

Court denied 16 pro se motions that Broussard had filed [Doc. Nos. 234, 239, 241, 242, 243, 245, 246, 247, 250, 251, 252, 253, 256, 257, 259, 267], including a motion for a new trial.  (Sept. 6, 2022 Order [Doc. No. 268].)   In September 2022, the Court sentenced Broussard to a within-Guidelines sentence of life imprisonment on Counts 1 and 4 through 15; 40 years on Counts 2 and 3; and 20 years on Counts 16 and 17, to be served concurrently.  (Sentencing J. & Am. Sentencing J. [Doc. Nos. 279 & 297].)

Broussard then filed a notice of appeal [Doc. No. 281].  Federal Defender Robert H. Meyers was appointed as appellate counsel.  Through counsel, Broussard raised a single issue on appeal, arguing that the Court had erred by permitting the Government to introduce photographs and biographical information about the victims at trial, commonly referred to as "spark-of-life" evidence.  *See United States v. Broussard*, 87 F.4th 376 (8th Cir. 2023). Broussard later moved to proceed pro se on appeal and requested an extension of time to file his own brief, but the Eighth Circuit denied his requests.  *Broussard*, No. 22-2980, Order, (8th Cir. May 19, 2023).  Nevertheless, Broussard filed a pro se supplemental brief, which the Eighth Circuit declined to entertain due to Broussard's legal representation. *Broussard*, 87 F.4th at 380 n.2 (citing *United States v. Benson*, 686 F.3d 498, 504-05 (8th Cir. 2012) ("It is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel.)).

While his direct appeal was pending, Broussard continued to file motions in this Court, including a Motion for Release [Doc. No. 286], which he separately appealed, pro se, to the Eighth Circuit [Doc. No. 378].  The Eighth Circuit dismissed his pro se appeal as premature [Doc. No. 385].

3

In November 2023, the Eighth Circuit denied Broussard's direct appeal, noting that he had failed to object to the spark-of-life evidence at trial, but even if an evidentiary error had occurred, it was neither clear nor obvious. *Broussard*, 87 F.4 at 379. Nor had Broussard shown that the admission of the evidence affected his substantial rights, as the Eighth Circuit found the evidence of Broussard's guilt "overwhelming." *Id*.

After the Eighth Circuit issued its mandate in February 2024, the Court addressed numerous pro se motions filed by Broussard while his appeal was pending, including six motions for a new trial, all of which the Court denied. (Feb. 16, 2024 Order [Doc. No. 410].)

In March and April 2024, Broussard filed the instant motions. In his timely-filed 2255 Motion, Broussard enumerates 26 interrelated grounds for relief. Approximately half of his claims are freestanding allegations of error. (2255 Mot., Grounds 1–12; 26.) Broussard asserts the following specific allegations of error: (1) insufficient counts in the Indictment: (2) "duplicitous counts of Indictment"; (3) double jeopardy violations; (4) deprivation of a grand jury indictment; (5) vindictive prosecution; (6) denial of motion to suppress evidence; (7) an erroneous evidentiary ruling concerning "the controversial evidence"; (8) sentencing errors; (9) constructive denial of counsel; (10) prosecutorial misconduct at trial; (11) wrongful denial of motion for acquittal; (12) admission of unfairly prejudicial evidence concerning victims; and (13) prejudicial misjoinder of counts. (2255 Mot., Grounds 1–12, 26.) The other half of Brossard's claims are claims of ineffective assistance of counsel based on appellate counsel's alleged failure to present the freestanding allegations of error on appeal. (*Id*., Grounds 13–25.)

4

Also pending before the Court are two pro se motions related to Broussard's 2255 Motion: (1) Broussard's "Motion for Stay, and Release Pending Disposition of Motion to Vacate; for Leave to Expand the Record, for Production of Transcripts on Govts Expense, and Detention Hearing"; and (2) "Request for Leave to File Continuation of Memorandum; and Continuation of Memorandum in Support of 18 U.S.C. 2255".

The Government opposes Broussard's 2255 Motion, asserting that he fails to show that his counsel's exercise of judgment fell below the standards of reasonable professional assistance under *Strickland v. Washington*. (Gov't's Opp'n [Doc. No. 422] at 1–13.) In particular, the Government contends that appellate counsel reasonably screened out weaker arguments, including baseless arguments, as a matter of appellate strategy. (*Id*. at 10–12.)

## II.  DISCUSSION

### A. Motion Under 28 U.S.C. § 2255

Section 2255 provides that

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

While § 2255 generally affords relief, it is only available in limited circumstances. As the Eighth Circuit has stated, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of

justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).  The petitioner bears the burden

of proof as to each ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th

Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

Moreover, relief under § 2255 "is not available to correct errors which could have

been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a

showing that the alleged errors were fundamental defects resulting in a complete

miscarriage of justice." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per

curiam).  The "cause and prejudice" necessary to revive a procedurally defaulted claim

may include ineffective assistance of counsel.  *See Becht v. United States*, 403 F.3d 541,

545 (8th Cir. 2005).

As to all but one of Broussard's freestanding claims alleging error in his 2255

Motion (Grounds 1–11, 26), the Eighth Circuit did not consider them on appeal.  Broussard

contends that he presented them in his pro se appellate memorandum, (2255 Mem. [Doc.

No. 416] at 1), however, as noted, the Eighth Circuit declined to consider the arguments

because Broussard was represented by counsel on appeal.  *Broussard*, 87 F.4th at 380 n.2.

Because the Eighth Circuit declined to consider his pro se brief, it was stricken from the

appellate docket.  *Id.*; *see also Broussard*, No. 22-2980, Docket Entry (8th Cir. Sept. 5,

2023) (stating, "***DOCUMENT LOCKED***Tendered Amd. Pro Se Supp. Brief

received from Appellant Aaron Rhy Broussard w/service 09/01/2023 . . . [Edited

11/29/2023 by CRJ. This pro se supplemental brief is stricken pursuant to the opinion and

judgment filed on 11/28/2023.]").  Consequently, the Court has no way to verify whether

6

Broussard raised his freestanding claims of error, even assuming he preserved the claims for appeal by filing a pro se supplemental brief in direct contravention of a court order. Broussard has not identified any authority in support of the proposition that he preserved these claims for appeal. The Government argues the claims are procedurally defaulted, although it identifies no authority related to claims in this unique procedural posture. (Gov't's Opp'n at 7 n.2.)

In *Winfield v. Roper*, 460 F.3d 1026, 1037–1038 (8th Cir. 2006), the Eighth Circuit faced somewhat analogous circumstances in a habeas petition brought by a state prisoner who was represented by counsel and who also sought to file a pro se brief. The question there was whether the prisoner's conflict of interest claim was preserved by his reference to it in his pro se brief, although the Missouri Supreme Court clerk refused to file his brief because the prisoner was represented by counsel, and counsel did not raise the issue on appeal. *Id.* at 1036. The prisoner argued that his claim could only have been defaulted if the last state court to consider it had denied it on the basis of an independent and adequate state ground and that the Missouri Supreme Court had invoked a non-existent rule against pro se briefs filed by represented parties. *Id.* The Eighth Circuit held that the claim was not procedurally barred simply based on the clerk's decision not to file the pro se brief because the state court lacked a clear and ascertainable rule to bar pro se filings by represented individuals. *Id.* at 1037–38. However, the court ultimately found the conflict-of-interest claim was procedurally defaulted because the last state court to address it found it was barred as untimely. *Id.* at 1038.

Ultimately, due to differences between habeas petitions arising in state court versus federal court, and because in prior orders, this Court ruled on the merits of some of Broussard's freestanding claims of error, *Winfield* does not provide clear guidance here. However, even if Grounds 1–11 and 26 are procedurally defaulted, Broussard essentially reasserts these grounds for relief as the underlying bases for his claims of ineffective assistance of counsel based on appellate counsel's failure to raise the arguments. (2255 Mot., Grounds 13–25.) Broussard objects to treating his freestanding claims as "mere extensions" of his ineffective assistance claims. (Reply [Doc. No. 423] at 1.) This Court will not ultimately decide whether the freestanding claims were procedurally defaulted. As a practical matter, in the course of considering Broussard's claims of ineffective assistance of counsel in Grounds 13–25, the Court will address the merits of Broussard's underlying, freestanding claims in Grounds 1–11 and 26.

As to Broussard's freestanding claim asserted in Ground 12, the Court construes it as a challenge to the Court's ruling on the admissibility of victims' spark-of-life evidence, which was the sole issue Broussard asserted on direct appeal. (2255 Mot., Ground 12 (asserting, "The Court's admittance of the alleged drug-victims' biographical evidence was in error, due to its irrelevance and unfairly prejudicial nature."); *see also id.*, Ground 24 (ineffective assistance of counsel based on failure to raise Ground 12 on appeal).) Because Broussard asserted this claim on direct appeal and the Eighth Circuit denied it on the merits, Broussard may not reassert it in his 2255 Motion. *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981) ("It is well settled that claims which were raised and decided on direct

appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."). Ground 12 therefore fails.

Nor may this claim form the basis for Broussard's related claim of ineffective assistance of counsel in Ground 24 because, as a matter of fact, appellate counsel did raise this claim on appeal. To the extent Broussard argues that his counsel was deficient for failing to object to the admission of the spark-of-life evidence at trial, (2255 Mem. at 22), the Eighth Circuit nevertheless entertained his appeal on this issue, factoring any such error into its analysis and finding it neither clear nor obvious. *Broussard*, 87 F. 4th at 379. Furthermore, the Eighth Circuit found that the admission of the evidence did not affect Broussard's substantial rights, as the evidence against him was overwhelming and he failed to show a reasonable probability that but for the admission of the evidence, he would not have been found guilty. *Id*.

For all of these reasons, Broussard's grounds for relief based on the spark-of-life evidence (2255 Mot., Grounds 12, 24) fail.[2]

## 1. Ineffective Assistance of Counsel

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove

---

[2]     Broussard's arguments concerning the alleged errors of the Eighth Circuit on his direct appeal (2255 Mem. at 22–24) are not properly asserted in a 2255 motion. Rather, Broussard's recourse would have been to file a petition for certiorari with the U.S. Supreme Court.

both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).

When considering a claim of deficient performance based on appellate counsel's failure to raise certain arguments, absent any contrary evidence, courts "assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008).   Indeed, the Supreme Court has held that a defendant has no constitutional right to have appellate counsel raise every possible non-frivolous issue on appeal—even issues the defendant specifically requests. *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  This is because "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751.  Thus, the Supreme Court has held that appellate counsel may exercise reasonable professional judgment in selecting issues to raise on appeal, noting that to otherwise require counsel "to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." *Id*. at 754.  Thus, "[d]eclining to raise a claim . . . is not deficient performance unless that claim was plainly stronger than those actually presented." *Deck v. Jennings*, 978 F.3d 578, 584 (8th Cir. 2020) (quoting *Davila v. Davis*, 582 U.S. 521, 533 (2017)).

To establish prejudice, the movant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different" had counsel raised the omitted issues on appeal.  *Brown*, 528 F.3d at 1033.

The Court therefore considers the arguments that Broussard contends his appellate counsel should have raised on direct appeal.

a. **Failure to Challenge the Sufficiency of the Counts in the Indictment and Lack of Evidence to Support the Indictment (Grounds 1, 13)**

Broussard reiterates a familiar argument in Ground 13 of his 2255 Motion, arguing that appellate counsel was deficient for failing to challenge the sufficiency of the Indictment and the related question of whether the grand jury had sufficient evidence to charge him.  (2255 Mot., Ground 13; *see also id*., Ground 1.)  He contends that he was not charged with violating the Controlled Substance Analogue Act (the "Analogue Act"), but with violating the Controlled Substance Act, and that he did not knowingly distribute fentanyl, a controlled substance.  (2255 Mem. at 2.)  Rather, Broussard argues, he believed that he was distributing 4-FA, an analogue drug.  (*Id*.)  Broussard contends that while the Indictment did not charge him with Analogue Act violations, at trial, the jury instructions included language regarding analogue drugs, which unconstitutionally "amended" the Indictment.  (*Id*. at 2–3.)

The Court has rejected this argument—and slight variations on this argument—every time Broussard has raised it.  (*See, e.g.*, Sept. 15, 2021 Order Adopting R&R [Doc. No. 69] at 9–11; Sept. 6, 2022 Order at 3–6; Feb. 16, 2024 Order 12–13.)   As the Court has repeatedly explained, the Analogue Act provides that an analogue drug such as 4-FA can be treated as a controlled substance for purposes of "any" federal law, 21 U.S.C. § 813(a),

and "any" federal law includes the Controlled Substance Act.  (Sept. 15, 2021 Order at 10.)
The Controlled Substance Act's requirement of knowingly distributing a controlled substance
is satisfied when a defendant knowingly distributes a substance that is an analogue to a listed
controlled substance.  (*Id.*) (citing *McFadden v. United States*, 576 U.S. 186, 188–89 (2015)).
The jury instructions were consistent with this law and consistent with the crimes charged in
the Indictment.  (*Compare* Final Jury Instr.  [Doc. No. 210] Nos. 11–16, *with* Indictment.)

As to whether appellate counsel should have raised this argument on appeal, the Court
finds that this issue was not "plainly stronger" than the victim-related evidence that
appellate counsel challenged on appeal.  *Deck*, 978 F.3d at 584.  The Court has
resoundingly rejected Broussard's analogue drug-related arguments and continues to find
his position contrary to law.  Accordingly, relief based on Broussard's claim in Ground 13
is therefore denied.  To the extent he has not procedurally defaulted his freestanding claim
for relief in Ground 1, it is likewise denied.

### b.   Failure to Appeal Allegedly Duplicitous Conviction and Alleged Double Jeopardy Violations (Grounds 2, 3, 14, 15)

Broussard also contends that he was convicted of duplicitous fentanyl distribution
counts, resulting in a double jeopardy violation, and that his appellate counsel was deficient
for failing to appeal these issues.  (2255 Mot., Grounds 2, 3, 14, 15; 2255 Mem. at 3.)
Specifically, he argues that the jury convicted him of *attempted* 4-FA distribution and
actual fentanyl distribution simultaneously, in violation of the Double Jeopardy clause.
(2255 Mem. at 3.)  Broussard previously raised this issue in a post-trial motion, which the
Court rejected.  (September 6, 2022 Order at 6–7.)

12

"Duplicity" refers to "two or more distinct and separate offenses [that] are joined in a single count." *United States v. Pietrantonio*, 637 F.3d 865, 869 (8th Cir. 2011).  With regard to the fentanyl distribution counts here, the special verdict form expressly required the jury to determine whether Broussard distributed fentanyl "resulting in death" or "resulting in serious bodily injury," and to unanimously find "the defendant Aaron Rhy Broussard, _____ [guilty/not guilty] of the crime of distribution of fentanyl that resulted in [the death of ____] [or serious bodily injury to _____] from the use of such substance." (Redacted Jury Verdict, Counts 4–15.)   As the Court previously found, these determinations entail very specific findings by the jury and cannot be construed as duplicitous, nor was Broussard's conviction in violation of the Double Jeopardy Clause. (Sept. 6, 2022 Order at 7.)

The Court therefore finds that the duplicity/double jeopardy issue was not "plainly stronger" than the spark-of-life evidence that appellate counsel challenged on appeal. *Deck*, 978 F.3d at 584.  Accordingly, appellate counsel's performance was not deficient for failing to raise this issue.  Broussard's claims for relief based on ineffective assistance of counsel in Grounds 14 and 15 are therefore denied, and to the extent his freestanding claims are not procedurally defaulted, relief on Grounds 2 and 3 is likewise denied.

### c.   Failure to Appeal Government's Alleged Lack of Evidence Before Grand Jury (Grounds 4, 16)

In Ground 16, Broussard alleges his appellate counsel was deficient for failing to appeal the question of whether his constitutional rights were violated during grand jury proceedings.  (2255 Mem. at 4; *see also* 2255 Mot., Ground 4.)  He argues that through the

grand jury testimony of a DEA case agent, the Government "usurped the grand jury's role as independent finders of probable cause" because "[i]nstead of being presented evidence of how the relevant items met the statutory definition of a "Controlled Substance Analogue" (e.g., side by side comparisons of the items' chemical structures) . . . the government solely asserted these legal conclusions to the grand jury." (*Id.*)

This ground for relief is without merit.  As an initial matter, "grand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." *United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir.1986).  In fact, courts generally reject a defendant's challenge to a facially valid indictment on grounds of insufficient evidence, hearsay, or incompetent evidence. *Costello v. United States*, 350 U.S. 359, 363–64 (1956).

Importantly here, when a defendant is convicted following a trial, any prior errors connected with the charging decisions in grand jury proceedings are effectively mooted, as the petit jury's verdict supports not only a finding of probable cause, but a finding of guilt beyond a reasonable doubt. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) (noting that petit jury's subsequent guilty verdict requires a higher standard than probable cause, indicating grand jury properly found probable cause to indict defendants); *United States v. Ruiz*, 446 F.3d 762, 769 (8th Cir. 2006) ("The petit jury's ultimate finding of guilt beyond a reasonable doubt renders the alleged grand jury error, if any, harmless.").  For a small class of cases, however, the errors before a grand jury may be considered fundamental, structural errors, such as where racial or gender discrimination in the composition of the grand jury threatens a defendant's right to fundamental fairness. *United States v. Wilson*,

565 F.3d 1059, 1070 (8th Cir. 2009); *see also United States v. Hillman*, 642 F.3d 929, 936 (10th Cir. 2011) (noting that errors involving race and gender discrimination in the grand juror selection process represent the type of error that would render grand jury proceedings fundamentally unfair.). Such errors "go beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment" such that a guilty verdict "will not moot the issue." *Hillman*, 642 F.3d at 936.

Despite Broussard's blanket assertion that the alleged errors here threatened his right to fundamental fairness, (2255 Mem. at 4), this ground for relief goes directly to the evidence of probable cause before the grand jury. It does not approach the level of fundamental error sufficient to overcome the petit jury's findings of guilt. *See id*. ("[A]fter a petit jury's guilty verdict we will not consider a defendant's arguments regarding errors affecting only the grand jury's finding of probable cause, because those claims are mooted by the petit jury's findings of guilt."). Accordingly, because the petit jury found Broussard guilty,[3] errors before the grand jury, if any, affecting its finding of probable cause were harmless.

Broussard's appellate counsel's performance was not deficient for failing to raise this issue on appeal. Given the legal authority discussed above, this issue was not "plainly stronger" than the victim-related evidence that appellate counsel challenged on appeal.

---

[3]   At trial, the Government presented expert testimony about the chemical structures of the substances at issue, including fentanyl and 4-FA, and offered comparisons between 4-FA and amphetamine, a controlled substance. (Mar. 22, 2022 Trial Tr. [Doc. No. 360] at 456–71; 475–76.) Defendant had a full opportunity to cross examine the Government's witness and present its own evidence. (*Id*. at 471–75.)

15

*Deck*, 978 F.3d at 584.   Accordingly, the Court denies Broussard's claim for relief in Ground 16 and likewise denies relief on Ground 4, to the extent the claim was not procedurally defaulted.

> ### d.   **Failure to Appeal Allegedly Vindictive Prosecution (Grounds 5, 17)**

Broussard also argues that appellate counsel was deficient for failing to appeal the prosecution's allegedly vindictive conduct.   In particular, Broussard asserts that the Government brought additional charges against him in the District of Minnesota as punishment for his failure to plead guilty in the Middle District of Pennsylvania, where he was initially charged.   (2255 Mot., Grounds 5 & 17; 2255 Mem. at 5.)   The Court has previously rejected this argument.   (Sept. 15, 2021 Order at 14–16.)

"Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015).   A defendant bears a heavy burden "to show that the prosecution was vindictive, in light of the discretion prosecutors are given in performing their duties." *United States v. Robinson*, 809 F.3d 991, 1000 (8th Cir. 2016).

Broussard fails to meet this heavy burden.   In support of his argument that he was charged here in retaliation for not pleading guilty in the Middle District of Pennsylvania, Broussard cites language from an earlier Government memorandum in opposition to his motion to dismiss the Indictment on this basis.   (Def.'s Mem. at 5) (quoting Gov't Opp'n [Doc. No. 61] at 2).   In that earlier filing, the Government stated that when efforts to resolve Broussard's claims had failed in Pennsylvania, "the government had no choice but to seek a

more comprehensive indictment charging the defendant with all of the criminal claims it had against him, not just the single count alleged in Pennsylvania." (*Id.*)

The Supreme Court has recognized that "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Charging a defendant with a more serious charge after he declines to plead guilty to a lesser charge, without more, does not violate the Due Process Clause. *Id.* at 363 ("[I]n the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."); *United States v. Goodwin*, 457 U.S. 380 (1982) ("[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.")).

Moreover, the Supreme Court has advised that a presumption of vindictive prosecution in a pretrial setting should be viewed with caution, as compared to instances in which a defendant has been tried, his conviction has been overturned, and he has been subjected to enhanced punishment upon retrial. *Goodwin*, 457 U.S. at 372–84. The Court explained,

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins – and certainly by the time a conviction has been obtained – it is much more likely that the State has discovered and assessed all of the information against an

17

accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Id*. at 381.

The Court finds no basis for finding vindictive prosecution here, just as it previously found. (Sept. 15, 2021 Order at 14–17.) Broussard was not brought to trial in the Middle District of Pennsylvania, and after Broussard was charged in Minnesota, the charges in Pennsylvania were dismissed. *United States v. Broussard*, No. 3:16-cr-00352-RDM, Order Dismissing Superseding Indictment [Doc. No. 125] (M.D. Penn. Dec. 16, 2020). Moreover, while the Pennsylvania action was limited to a single death and single serious bodily injury and was limited in time to events occurring in 2016 in the Middle District of Pennsylvania, the charges in Minnesota reflected a multistate investigation into the deaths of and serious bodily injuries to multiple people between 2014 and 2017 throughout the United States. (*Compare* (*id.*, M.D. Penn. Superseding Indictment [Doc. No. 57]), *with* D. Minn. Indictment [Doc. No. 1].) There was ample probable cause to support the charges here and it was well within the prosecutors' discretion to decide to charge Broussard in Minnesota. *Bordenkircher*, 434 U.S. at 364. Therefore, the Court finds no basis for finding vindictive prosecution or a Due Process Clause violation simply because the prosecutors in Minnesota chose to bring charges against Mr. Broussard after he declined to resolve the charges in the Middle District of Pennsylvania.

Accordingly, Broussard's vindictive prosecution claim does not support his claim of ineffective assistance of counsel for counsel's failure to raise this issue on appeal. Moreover,

appellate counsel had the benefit of this Court's September 2021 ruling that rejected this argument. Appellate counsel reasonably considered it a weaker ground for appeal than the evidentiary issue that he pursued. *Deck*, 978 F.3d at 584. The Court therefore denies relief on Ground 17 of Broussard's motion (ineffective assistance for failure to raise vindictive prosecution on appeal), as well as Ground 5, to the extent it was not procedurally defaulted (freestanding vindictive prosecution claim).

e.   **Failure to Appeal the Denial of Motion to Suppress Evidence (Grounds 6, 18)**

Broussard also seeks relief on the grounds that his counsel was ineffective for failing to appeal the denial of his motion to suppress evidence. (2255 Mot., Grounds 6, 18.) He asserts that "this Court's incompl[e]te analysis when considering the presence of probable cause for issuance of search and seizure warrants led to the introduction of illegally obtained evidence at trial." (*Id.*)

In Broussard's Pro Se Motion to Suppress Evidence [Doc. No. 45], he asserted his familiar, flawed argument that the search warrants in this case[4] relied on a fundamental mischaracterization of the relevant law and he also argued that none of the warrants were supported by probable cause. The magistrate judge rejected both arguments, and as to probable cause, conducted a thorough four-corners review of the search warrants and

---

[4]      Ten search or tracking warrants were issued during the investigation into Broussard's activities. Consistent with Broussard's approach, because the search warrant affidavits [Doc. Nos. 52 & 53] are largely identical, the Court addresses them collectively, although the Court cites to a particular search warrant and application as a representative example. (*See* 2255 Mem. at 6) ("Essentially, because the government's affidavits are mostly identical, Broussard will address all within a general matter, instead of individually.").

applications.  (July 13, 2021 R&R [Doc. No. 62] at 21–31.)  She found sufficient probable cause and recommended that Broussard's Pro Se Motion to Suppress be denied.  (*Id*.)  After Broussard failed to lodge specific objections to the recommendation on his suppression motion, this Court adopted the magistrate judge's recommendation and denied Broussard's suppression motion.  (Sept. 15, 2021 Order at 21.)  To the extent he critiques the Court's analysis of probable cause as "incomplete," his argument is utterly belied by the magistrate judge's ten-page analysis of the warrants, followed by this Court's adoption of the same. (July 13 R&R at 21–31; Sept. 15, 2021 Order at 21.)

Assuming that Broussard preserved the issue for collateral review, in his 2255 Motion he again argues that the affidavits submitted by law enforcement agents in support of the search warrants misstated the law and presented insufficient facts to support a finding of probable cause.  (2255 Mem. at 6.)  Broussard contends that the affidavits do not specifically allege that he was involved in criminal activity concerning controlled substance analogues.  (*Id*.)  This ground for relief is based on Broussard's flawed argument, discussed earlier in § II.A.1.a., that his possession or distribution of fentanyl was unknowing.  (*Id*.)

Broussard refers to language in the search warrant affidavits from victim C.S., who informed investigators that he had ordered an Adderall-like substance from Broussard's website, stored it in a jar in his apartment, and after ingesting the substance, suffered a drug overdose.  (Aug. 5, 2016 Search Warrant Application [Doc. No. 53 at 8–19] ¶¶ 13–14.) The warrant application further states that at C.S.'s apartment, investigators found the jar containing the substance, which tested positive for fentanyl.  (*Id*. ¶ 16.)  After C.S. provided

investigators with the email address from which he had ordered the drug, one of the investigators made a controlled purchase from PLANTFOODUSA.NET. (*Id.* ¶¶ 17–18.) Broussard asserts that neither this package, nor any other intercepted package or controlled buy described in the search warrants, contained fentanyl. (2255 Mem. at 6.) Thus, he argues, "the government failed to corroborate [C.S.'s] statement's implication: that the Adderall-like substance was actually fentanyl." (*Id.*) The affidavit plainly states that the victim believed he was ingesting an Adderall-like substance and when the substance was retrieved and tested, the Adderall-like substance was actually fentanyl. (Aug. 5, 2016 Search Warrant Application ¶¶ 13–16.)

Broussard's counsel was not deficient for failing to challenge the ruling on Broussard's suppression motion. No reasonable attorney could present Broussard's flawed reading of the law on appeal and the search warrants were supported by ample probable cause. This argument would not have been "plainly stronger" than the evidentiary issue that appellate counsel raised on appeal. *Deck*, 978 F.3d at 584. Accordingly, Ground 18 fails, as does the freestanding claim on which it is based in Ground 6, assuming the freestanding claim was not procedurally defaulted.

### f.   Failure to Appeal Allegedly Erroneous Evidentiary Ruling (Grounds 7, 19)

Broussard argues that his counsel was ineffective for not appealing the Court's ruling concerning the admissibility of certain evidence pursuant to the exception to the hearsay rule for statements made by a coconspirator in furtherance of a conspiracy, (2255 Mot., Ground 19.) Broussard also asserts this argument as a freestanding claim, assuming

it is not procedurally defaulted.  (*Id.*, Ground 7.)  The evidence in question consisted of email communications between Broussard and "Grace," an unindicted coconspirator employed by a Chinese chemical factory with whom Broussard placed his orders for drugs. (*See* Tr. Exs. Z-6, Z-17, Z-18, Z-25, Z-26, Z-27, Z-28, Z-29, Z-30, Z-32, Z-43, and Z-44.) Broussard acknowledges that in ruling on this issue before trial, the Court "conducted the standard analysis of whether the controversial evidence was of Broussard's co-conspirator."  (2255 Mem. at 7.)  However, he contends the Court's analysis was "fatal[ly] flaw[ed]" because "the items [discussed in the emails] weren't Federal Controlled Substances" and the Court failed to determine whether "there was a fair probability" that the items met the statutory definition of a Controlled Substance Analogue and if Broussard intended the items for human consumption.  (*Id.*)

In response to Broussard's pretrial Motion in Limine [Doc. No. 177] to Exclude Coconspirator Statements, the Court issued a written ruling.  (Mar. 21, 2022 Order [Doc. No. 187].)  The Court examined the email communications in question and applied the standard by which an out-of-court statement of a coconspirator may be admitted under Federal Rule of Evidence 801(d)(2)(E), i.e., whether the evidence showed, by a preponderance, that (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statements were in furtherance of the conspiracy. (*Id.* at 2–3) (citing *United States v. Sturdivant*, 513 F.3d 795, 802 (8th Cir. 2008)).  Indeed, the Court found by a preponderance that Broussard and Grace had exchanged more than 60 email communications over a 17-month period facilitating the sale of illegal drugs; that their communications—especially those concerning secrecy and intentional mislabeling of

22

packages—demonstrated that they were members of the conspiracy; and that the communications sought to further the conspiracy through the sale and shipment of illegal drugs.   (*Id*. at 5–8.)

Broussard argues that the Court should have injected a probable cause finding into its analysis.  (2255 Mem. at 7) (accusing the Court of "failing to make an independent determination of whether there was a fair probability that the items met the statutory definition of a 'Controlled Substance Analogue.'").  On the contrary, the Court applied the proper standard to the question of the admissibility of this evidence.   In the March 21, 2022 Order, the Court block-quoted portions of the emails in which Broussard and Grace identified the drugs in question in shorthand form ("2fma, 2fa, eph, 4homipt, 3meopcp," and "4fa"), with Broussard also stating, "[*T*]*he names you mentioned in a previous email are controlled substances here*, so don't let that be a [sic] issue with packaging" and "4-Aminosalicylic acid is a prescription drug here."  (*See, e.g.*, Mar. 21, 2022 Order at 6) (quoting Exs. Z-17, Z-18) (emphasis added).   The statements themselves amply demonstrated by a preponderance of the evidence that Broussard and Grace were engaged in illegal drug activity and sought to evade detection.  The Court was not required to make any additional findings about the drugs in order to rule on the admissibility of Grace's out-of-court statements.  *See Sturdivant*, 513 F.3d at 802.

Broussard's appellate counsel reasonably chose not to present this argument on appeal.  It would not have been "plainly stronger" issue than the spark-of-life evidence that counsel ultimately appealed.  *Deck*, 978 F.3d at 584.  Accordingly, Ground 19 fails, and to the extent Ground 7 is not procedurally defaulted, it also fails.

g.   **Failure to Appeal Allegedly "Egregious Sentencing Errors" (Grounds 8, 20)**

Broussard also argues that his counsel was ineffective for failing to appeal the Court's "egregious sentencing errors." (2255 Mot., Ground 20; *see also id*., Ground 8.) He contends that he received a life sentence based on the Court's improper balancing of aggravating and mitigating factors. Specifically, he argues that at sentencing, the Court misrepresented the evidence; found him to be without remorse, in violation of his right to remain silent; and misapplied a sentencing enhancement. (2255 Mem. at 8–11.)

### (1) Alleged Misrepresentation of Evidence

Among the factors that a court must consider in fashioning a sufficient sentence are the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. 18 U.S.C. § 3553(a)(1)–(2)(A)(B). In addition, the court must consider the need for the sentence to protect the public from further crimes of the defendant. *Id*. § 3553(a)(2)(C).

The Court expressly took these factors into account at sentencing when describing the nature of the offense conduct, which resulted in the deaths of 11 people and serious injury to four others. In doing so, Broussard argues, the Court improperly stated that Broussard had failed to test the drugs from China and that even after people died, he failed to warn customers and continued to market his drugs. (2255 Mem. at 8–9.) Broussard contends that the evidence at trial failed to support the Court's statements and the Court failed to consider as a mitigating factor that he occasionally tested the drugs. (*Id*.) He

asserts that if he had continuously marketed the fentanyl to unsuspecting customers, there would be evidence of more deaths.  (*Id*. at 9.)

The evidence at trial established that prior to shipping the victims' orders in 2016, Broussard did not test the lethal drugs that killed and injured his customers.  Broussard quibbles with the fact that there was evidence that he tested drugs occasionally, and that while his supplier repeatedly asked him about testing, her focus was on the quality of the drugs, not the chemical composition.  (Trial Ex. Z-28, Mar. 29, 2022 Trial Tr. [Doc. No. 368] at 1237–41, 1245.)

Granted, there was some evidence that Broussard occasionally tested drugs shipped from his Chinese supplier, particularly after a mix-up with a "bad batch" in 2015.  (Mar. 29, 2022 Trial Tr. at 1226, Trial Ex. Z-23.)  But there was overwhelming evidence that Broussard failed to test the Chinese drugs regularly, even when repeatedly asked by his supplier if he had done so.  (*See, e.g.*, Trial Ex. Z-27 (providing no response to Chinese supplier's question, "Have you tested the Ethylphenidate?  What about the quality?"); *see also* Trial Ex. Z-26.).)   Regardless of whether the Chinese supplier's focus was on testing for "quality" as opposed to verifying the chemical composition, Broussard was well aware of the need to test for chemical composition following the earlier mix-up in 2015 involving bath salts.  (Mar. 29, 2022 Trial Tr. at 1226.)  Moreover, he knew that he sold and shipped the drugs that ultimately killed and injured his customers with no assurance of their chemical composition at that time, later telling his supplier that he had "no idea what was sent" from China and that he ultimately had to "pay[] a couple hundred dollars to get it tested, just for reassurance & for lab proof to backup [sic] my word."  (Tr. Ex. Z-39.)

The Court's observations at sentencing were established by this evidence. (Sentencing Tr. [Doc. No. 315] at 78–79.)  The fact that more customers did not die or suffer injury does not mitigate Broussard's conduct with respect the victims here.

At sentencing, the Court also properly considered the § 3553(a) factors.  The Court's remarks concerning the horrific nature and circumstances of the offense conduct, its seriousness, and the need to protect the public were entirely appropriate.  (*Id.* at 78–80.)

To challenge any of these statements on appeal would have been a losing proposition.  Therefore, appellate counsel was not ineffective for failing to raise the Court's alleged misrepresentation of the evidence, which was not "plainly stronger" than the spark-of-life issue.  *Deck*, 978 F.3d at 584.    Accordingly, this ground for relief fails to support a claim of ineffective assistance of counsel, and, to the extent it was not procedurally defaulted, it fails to serve as a freestanding ground for relief.

### (2) Statements Regarding Lack of Remorse

Broussard also argues that his counsel was ineffective for failing raise an issue on appeal concerning the Court's observation at sentencing that Broussard showed no remorse or concern for his victims.[5]  (2255 Mot., Ground 20; *see also id.*, Ground 8; 2255 Mem. at 10.)  Broussard relies on *Mitchell v. United States*, 526 U.S. 314 (1999), in which the Supreme Court held that a defendant's Fifth Amendment right to silence extends through sentencing.  He contends that the Court improperly punished him for invoking his right to

---

[5]    Broussard unsuccessfully raised a variation on this argument in an earlier motion, citing the Court's comments at sentencing about his lack of remorse, and arguing that the Court sentenced him in retaliation for his pursuit of valid legal defenses.  (Def.'s Mot. for Resentencing [Doc. No. 289] at 4.)

remain silent at sentencing, which the Court mischaracterized as demonstrating a lack of remorse.  (2255 Mem. at 10.)

As noted earlier, Broussard represented himself at sentencing.  He spoke in response to general inquiries about his receipt of the Presentence Investigation Report and the calculation of the Sentencing Guidelines, voiced his objections to arguments raised by the Government, disputed the role of standby counsel with the Court, and unsuccessfully sought to file new motions.  (Sentencing Tr. at 1–17.)  When given the opportunity to allocute prior to the imposition of sentence, Broussard and the Court had the following colloquy:

> THE COURT:  All right.  At this time, Mr. Broussard, you may speak on your own behalf.  You must limit your remarks to those relevant to sentencing, please.  I know that you do have a pending motion for downward departures.  You may address that.  You may address any motion you might have for a downward variance as well.
>
> THE DEFENDANT: I presented all my arguments within, you know, written forms.  So I would, you know, I choose not to speak right now.
>
> THE COURT: Okay.  This is your only chance to speak on behalf of yourself at the sentencing before I sentence you.  This is the moment right now.  So if you wish to say anything on your own behalf, if you wish to say anything to the folks here who have come here, the victims and loved ones, this is your chance, Mr. Broussard.
>
> THE DEFENDANT:  I'm aware of that and I'm fine.  I'm not speaking.

(*Id*. at 18–19.)

As noted, in imposing the sentence, the Court recounted Broussard's dangerous conduct, starting with his illegal international drug-trafficking conspiracy, operated under the guise of selling "plant food."  (*Id*. at 78.)  The Court observed that Broussard failed to

27

test the drugs in question, despite warnings on more than one occasion from his co-conspirators to do so, and his own knowledge of "bad batches" from prior shipments.  (*Id*.)  Furthermore, the Court observed that when Broussard learned that the drugs he sold in April and May of 2016 were causing overdoses, he failed to warn his customers.   (*Id*. at 78–79.)  Instead of focusing on the victims, Broussard "continued to try to place orders from [his] supplier and secure a discount on future purchases given the mix-up in sending the wrong drugs." (*Id*.)  Even when faced with the loss of 11 lives and serious injuries to four others, the Court observed that Broussard demonstrated no expression of caring for their families or any expression of remorse, empathy, or sympathy. (*Id*. at 79.)

From these limited remarks, there is no indication that the Court drew negative inferences based on Broussard's decision not to allocute at sentencing.  The overwhelming evidence at trial, to which the Court referred, firmly established that Broussard's conduct warranted a significant sentence.[6]

However, even if the Court had formed a negative inference of no remorse based in part on Broussard's decision not to allocute at sentencing, Broussard cannot demonstrate prejudice by showing that the outcome here would have been different but for his appellate

---

[6]     Moreover, as a general matter, the Eighth Circuit has affirmed sentences in which district courts have considered either the absence or presence of remorse as aggravating or mitigating factors under § 3553(a).  *See United States v. Nosley*, 62 F.4th 1120, 1130 (8th Cir. 2023) (affirming sentence of 1,680 months in which district court properly considered defendant's background, offense conduct, mitigating factors, and also that defendant exhibited no remorse or repentance); *United States v. Palkowitsch*, 36 F.4th 796, 803 (8th Cir. 2022) ("The district court also properly noted Palkowitsch's apparent lack of remorse before his apology at sentencing[.]"); *United States v. Levy*, 18 F.4th 1019, 1023–24 (8th Cir. 2021) (finding record reflected that sentencing court thoughtfully weighed appropriate sentencing factors, including defendant's genuine display of remorse).

counsel's failure to raise this issue on appeal.  *Brown*, 528 F.3d at 1033.  Under these facts and the law, Broussard would have received exactly the same sentence.  As noted earlier, Broussard received a life sentence on Counts 1 (conspiracy) and 4–15 (distribution of fentanyl resulting in death or serious bodily injury).  A life sentence was within the statutory range of imprisonment, 21 U.S.C. § 841(b)(1)(B) ("not less than 20 years or more than life" for drug distribution offenses resulting in death or serious bodily injury), and within Broussard's Guidelines range.  U.S.S.G. § 5A.

In addition, the Court was required to take into account multiple § 3553(a) factors to accomplish the goals of sentencing.  Again, the Court considered the horrific and devastating nature and circumstances of the offense.  Also, the Court considered the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to adequately deter criminal conduct.  Finally, the court considered the need to protect the public from further crimes of the defendant, noting that even when Broussard learned of the danger posed to his customers, he took no steps to warn them, but continued selling drugs.  As the Court explained at sentencing, Broussard received a life sentence "because [the  Court] had no confidence that in the future [he] wo[uldn't] continue to reoffend."  (Sentencing Tr. at 80.)  These facts about Broussard's conduct, even without consideration of Broussard's lack of remorse, further show that the outcome of Broussard's sentence would not have been different.

The Court therefore finds that Broussard's appellate counsel was not deficient for failing to raise this issue on appeal, nor can Broussard demonstrate prejudice.  This issue was not "plainly stronger" than the spark-of-life issue that appellate counsel raised.  *Deck*,

978 F.3d at 584.   Accordingly, the Court denies relief on both Broussard's ineffective assistance of counsel claim on this basis and his freestanding claim.

### (3) Amphetamine Importation Sentencing Enhancement

Broussard also argues that the Court improperly applied a sentencing enhancement, and his appellate counsel was ineffective for failing to raise this issue on appeal.  (2255 Mot., Grounds 8, 20; 2255 Mem. at 11.)  As noted earlier, Broussard represented himself at sentencing.

The Sentencing Guidelines advise courts on a sentencing range based on a consideration of the defendant's offense level and criminal history.  The base offense level applicable to a drug conviction turns on whether death or serious bodily injury resulted from the use of the substance, whether the defendant had prior convictions, or on the type and amount of the drug in question, as set forth in § 2D1.1(a) of the Guidelines. Broussard's base offense level was established under § 2D1.1(a)(2), applicable to defendants convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and in which the offense of conviction established that death or serious bodily injury resulted from the use of the substance.

Enhancements to the base offense level may be added for a variety of factors based on "specific offense characteristics," such as the use of dangerous weapons or violence in the commission of the offense or because the offense involved a specific drug.  U.S.S.G. § 2D1.1(b).  Here, the sentencing enhancement in question was a 2-point enhancement to Broussard's base offense level because his offense involved the importation of amphetamine.  U.S.S.G. § 2D1.1(b)(5) ("If (A) the offense involved the importation of

amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under §3B1.2 (Mitigating Role), increase by 2 levels.").

The Guidelines further provide that any reference to a particular controlled substance includes any analogue of the controlled substance. *Id.*, cmt. 6. When the drug in question is an analogue "that is not specifically referenced in this guideline," the base offense level is determined by using "the converted drug weight of the most closely related substance referenced in this guideline."[7] *Id.* Although § 2D1.1 assigns base offense levels to a number of controlled substances, 4-FA is not among them.

To determine the most closely related controlled substance to an analogue drug, courts are to consider, to the extent practicable:

(A)   Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

(B)   Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C)   Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

---

[7]   Again, Broussard's offense level was not determined based on the amount and type of drugs in question, but because death and serious bodily injury resulted from the use of the drugs.  U.S.S.G. § 2D1.1(a)(2).

*Id.*   The question of whether a substance is similar is a factual determination.  *United States v. Ramos*, 814 F.3d 910, 918 (8th Cir. 2016).

Prior to sentencing, Broussard, in his pro se capacity, moved for a 60-day extension to obtain an expert to testify at his sentencing hearing about the amphetamine importation enhancement.  (Def.'s Mot. for Extension [Doc. No. 259]).  Specifically, he sought expert testimony that amphetamine is not the most closely related substance to 4-FA.  (*Id.* at 2–8.)  In denying the motion, the Court explained that the evidence introduced at trial would be sufficient to make the determination at sentencing about the most closely related substance, consistent with § 2D1.1, note 6.  (Sept. 6, 2022 Order at 22–24.)  The Court found it notable that Broussard had introduced no evidence at trial, expert or otherwise, to contradict the Government's evidence that 4-FA is substantially similar to amphetamine and that it does have a substantially similar effect on the central nervous system.  (*Id.* at 23.)  Not only had the Court delayed trial numerous times to allow Broussard the opportunity to find experts to support his theories, he had five months between the jury verdict and his sentencing hearing to find an expert to support his theory that some other controlled substance was more closely related to 4-FA, and he had not even started searching for such an expert when he filed his motion for a sentencing extension.  (*Id.* at 24.)

In his 2255 Motion, Broussard contends that at sentencing, "[t]he Court rejected Broussard's offerings of facts to enable its independent determination, instead it supported this application [of the enhancement] 'because under the guidelines any reference to a particular controlled substance includes any analogue of that controlled substance, and at

trial the Government proved that 4-FA is an analogue of amphetamine.'" (2255 Mem. at 11) (citing Sentencing Tr. at 14–17.)  Broussard argues that even if the jury determined that 4-FA was a controlled substance analogue of amphetamine, "such jury determination does not substitute for this Court's independent [determination] . . . which it failed to express on [the] record." (*Id.*)

In addition to arguing that the Court failed to make a factual finding, Broussard argues that 3,4-methylenedioxymethamphetamine (MDMA)—sometimes known as "Molly" or ecstasy—is the proper comparator to 4-FA, not amphetamine. (*Id.*)  While the Guidelines include a 2-point enhancement for the importation of amphetamine or its analogues, there is no enhancement specific to MDMA.

As the Court stated on the record at sentencing, it relied on the jury's finding that 4-FA is an analogue of amphetamine and that Broussard conspired with others to distribute sizeable quantities of 4-FA. (Sentencing Tr. at 17.)  Undergirding that finding and the jury's verdict was expert testimony at trial that 4-FA shares enough similarities with amphetamine, a Schedule II controlled substance, to be considered an analogue. (Mar. 22, 2022 Trial Tr. at 466; Mar. 24, 2022 Trial Tr. [Doc. No. 339] at 793.)  Dr. Christine Herdman, the Government's expert chemist, opined that 4-FA is substantially similar in chemical structure to amphetamine—so much so as to be "nearly identical" and "one of the easiest substitutions that you see in organic chemistry." (Mar. 22, 2022 Trial Tr. at 466, 476.)  Dr. Olubukola Kalejaiye, the Government's expert pharmacologist, opined that 4-FA has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic

effect of amphetamine, a Schedule II controlled substance. (Mar. 24, 2022 Trial Tr. at 755, 793–94.) Specifically, Dr, Kalejaiye testified, "4-[FA] has a substantially similar pharmacological effect to amphetamine in that it does both bind to and causes the release of dopamine, it does mimic the effects of cocaine and methamphetamine, and adverse effects do occur." (*Id.* at 793.)

The Court finds that Broussard's appellate counsel was not ineffective for failing to raise the application of the amphetamine importation enhancement on appeal. Unlike a case in which a conviction results from a plea agreement, for which expert testimony at sentencing might be warranted when determining whether to apply the 2-point enhancement, the Court had the benefit of hearing the Government's expert testimony regarding 4-FA and amphetamine during Broussard's eight-day trial. The jury confirmed those findings. Furthermore, Broussard had ample time to obtain an expert opinion before trial and before sentencing.[8] He failed to do so. For all of these reasons, this ground for relief fails as the basis for establishing ineffective assistance of counsel and as an independent ground for relief.

Accordingly, the Court denies relief on Broussard's ineffective assistance claim premised on the Court's alleged sentencing errors (Ground 20) and his freestanding version of this claim (Ground 8), to the extent it was not procedurally defaulted.

---

[8]    In addition to Broussard's attempt to continue his sentencing hearing, he sought a third trial continuance shortly before trial in order to find an expert [Doc. No. 113]. Broussard, who was self-represented at the time, moved for his third trial continuance and was ably assisted by standby counsel, Mr. Morrison. The Court denied the motion for several reasons, including that Broussard had had over 14 months to prepare for trial. (Feb. 8, 2022 Order [Doc. No. 118] at 4–5.)

h.  **Failure to Appeal Alleged Constructive Denial of Counsel (Grounds 9, 21)**

Another of Broussard's grounds for relief is based on counsel's failure to appeal the "Court's constructive denial of counsel."  (2255 Mot., Ground 21; *see also id.*, Ground 9; 2255 Mem. at 12.)  Broussard alleges several instances of the constructive denial of counsel based on the Court's alleged actions in:  (1) failing to allow for adequate and equitable trial and sentencing preparation; (2) "placing the burden of proof on Broussard"; (3) deflecting Broussard's attempts at advocating in his defense; (4) "infect[ing] [the] criminal process" through "the Court's impartiality"; and (5) the cumulative effect of this Court's resistance to his defense.  (2255 Mem. at 12–15.)

### (1) Alleged Failure to Allow for Adequate Trial Preparation and Equitable Sentencing Preparation

Broussard's claims are without merit.  First, regarding his allegation that the Court failed to provide adequate and equitable trial preparation and sentencing preparation, Broussard specifically refers to the denial of his third request for a trial continuance (*see supra* at n.8), and his efforts to obtain an expert prior to trial.  (2255 Mem. at 12–14.)  In addition, he contends that at sentencing, the Court's comment that standby counsel was not serving as Broussard's counsel demonstrated an "omnipresent attitude" that "continued to ensure inequity throughout the judicial process."  (*Id.*) (citing Sentencing Tr. at 4–9.)

In denying Broussard's third motion for a trial continuance, the Court acknowledged the difficulties Broussard had faced while appearing pro se and reviewing documents during the Covid-19 pandemic.  (Feb. 8, 2022 Order at 5.)  However, Broussard had over 14 months in which to prepare for trial, during which time the Court had granted an earlier

motion for a 90-day continuance. (*Id.*)  Ultimately, the Court found that continuing the trial yet again would prejudice the Government and cause hardship to many of the Government's witnesses. (*Id.*) (citing *United States v. Farlee*, 757 F.3d 810, 821 (8th Cir. 2014) ("[T]he trial judge must balance the asserted need for the continuance against the hardship of the resulting delay.")).  The Court properly weighed the facts and competing interests of the parties.

As to the Court's comments at sentencing, they merely clarified the role and responsibilities of standby counsel. (*See* Sentencing Tr. at 4–9.)

Appellate counsel was not deficient for failing to raise these issues on appeal, nor are they viable freestanding claims.

### (2) Allegedly Placing Burden of Proof on Defendant

Broussard also alleges that the Court demonstrated a lack of impartiality by denying Broussard the opportunity to argue "a valid legal defense" at trial. (2255 Mem. at 14.) Specifically, the defense was Broussard's belief that he was distributing an analogue drug, not fentanyl. (*Id.*)  He contends that the Court unfairly permitted the Government to "assert[] at trial that the substances in question were 'controlled substance analogues.'" (*Id.*)

The Court never placed the burden of proof on Broussard.  The jury, as the ultimate factfinder, decided whether the substances in question were controlled substance analogues. (*See* Redacted Jury Verdict at 2) (unanimously finding 4-FA and 2-(ethylamino)-1-phenylhexan-1-one hydrochloride were controlled substance analogues intended for human consumption that Broussard conspired to distribute).  The Court

prohibited Broussard from raising his "mistaken drug" defense because it was inconsistent with the law, as he was repeatedly informed. Under the law, the Government was required to prove that the defendant "knew that the substance he was distributing [was] controlled under the CSA or Analogue Act, regardless of whether he knew the substance's identity," or that the defendant "knew the specific analogue he was distributing, even if he did not know its legal status as a controlled substance analogue." *McFadden*, 576 U.S. at 187 (stating that the CSA's knowledge requirement "may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was."). The Government met its burden of proof, as reflected in the jury's unanimous verdict on all counts. Broussard's counsel was not deficient for failing to raise this issue on appeal, as it was not "plainly stronger" than the evidentiary issue that appellate counsel raised, *Deck*, 978 F.3d at 584, nor is it a viable freestanding ground for relief.

### (3) Failure to Appeal Alleged Denial of Defendant's Right to a Defense, Cumulative Effect of Court's Alleged Denial of a Defense, and Alleged Infection of the Criminal Process

Broussard also argues that his appellate counsel was deficient for failing to appeal the Court's alleged denial of his right to a defense, and he asserts a stand-alone claim to this effect as well. (2255 Mot., Grounds 9, 21; 2255 Mem. at 14–15.) In addition, he argues that cumulatively, the Court denied or resisted his right to a defense and that "[t]he Court's impartiality infected [the] criminal process." (*Id.*)

He argues that the Court committed a constitutional violation by refusing to permit him to file additional motions at sentencing. (2255 Mem. at 14.) In addition, he argues

that the Court attempted to deny his pretrial motions without review at an August 2, 2022 pretrial hearing. (*Id.* at 15.)

Minnesota courts "consistently hold pro se litigants to the same rules and standards as licensed attorneys." *Peet v. Associated Bank, N.A. Mendota Heights*, No. 11-cv-2544 (SRN/JJG), 2013 WL 717349, at *4 (D. Minn. Feb. 27, 2013) (finding a party's pro se status during court proceeding did not indicate he was denied a full and fair opportunity to litigate his claims), *aff'd*, 556 Fed. Appx. 546 (8th Cir. 2014); *see Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001) (noting that some accommodations may be made for pro se litigants, but they are generally held to the same standard as attorneys and must comply with court rules).

Broussard fails to identify any evidence that he was unfairly denied the opportunity to file motions at his sentencing hearing. As a matter of fact, the record reflects that Broussard had a full and fair opportunity to file motions in advance of his September 12, 2022 sentencing hearing. In fact, the Court's September 6, 2022 Order addressed 16 of Broussard's post-trial/pre-sentencing motions and the Court addressed his motion for a downward variance at the hearing. (Sentencing Tr. at 71; 78–81.) Broussard's argument that the Court denied his right to a defense is utterly without merit.

As to Broussard's claim that the Court *attempted* to deny his motions at a pretrial hearing without review is likewise without merit. In his memorandum, he acknowledges that after he informed the Court that certain of his pending motions raised new issues, the Court ordered the Government to review the motions and respond to any issues not previously addressed. (Aug. 2, 2022 Minute Order at 1.)

38

None of these specific Court actions demonstrates the denial of Broussard's right to a defense.  Likewise, the Court rejects Broussard's argument that the Court's "attitude" toward him "infected the entire criminal process."  (2255 Mem. at 14–15.)  The record speaks for itself.  Appellate counsel was not deficient for failing to raise these meritless grounds for relief, which were not "plainly stronger" than the spark-of-life issue raised on appeal.  *Deck*, 978 F.3d at 584.

For all of these reasons, Ground 21 fails to afford Broussard relief, and to the extent his freestanding claim on this basis was not procedurally defaulted, Ground 9 likewise fails.

### i.   Failure to Appeal Alleged Governmental Misconduct at Trial (Grounds 10, 22)

Broussard also argues that his appellate counsel was deficient for failing to appeal instances of the Government's alleged misconduct at trial.  (2255 Mot., Ground 21; *see also id.*, Ground 10.)  He alleges the following acts of such misconduct:  (1) wrongfully accusing Broussard of intentionally distributing fentanyl; (2) using prejudicial rhetoric regarding drugs; (3) inflaming the passions of the jury; and (4) misstating the law, offering personal opinions on ultimate facts, making misrepresentations, and shifting the burden of proof.  (2255 Mem. at 16–18.)  Broussard argues that as a result of such misconduct, he was denied a fair trial.  (*Id*. at 18.)

At the heart of Broussard's allegations of Government misconduct is his oft-repeated argument that he was wrongfully convicted because he did not know the substance he distributed was fentanyl, but thought it was a controlled substance analogue.  The Court has rejected this argument herein, *supra* at II.A.1.a., and in many prior orders.  (*See, e.g.*,

Sept. 15, 2021 Order at 9–11; Sept. 6, 2022 Order at 3–6; Feb. 16, 2024 Order 12–13.) Because the fundamental legal premise of Broussard's argument is incorrect, counsel for the Government did not commit misconduct at trial by wrongfully accusing him.

Broussard's arguments that the Government's witnesses matter-of-factly labeled drugs as analogues and that counsel for the Government, in closing arguments, told the jury how to decide the facts (2255 Mem. at 17–18) likewise fail. While the Government appropriately offered expert testimony in order to prove the elements of the crimes charged, the jury ultimately decided that 4-FA was a controlled substance analogue. (Redacted Jury Verdict at 2.)

Broussard's allegations that the Government committed misconduct by shifting the burden of proof also fail. This argument is generally premised on Broussard's misunderstanding of the law, as the Court has discussed *supra* at II.A.1.a., and provides no basis for relief. The burden of proof remained firmly with the Government throughout the trial and the jury was so instructed by the Court. *See supra* at II.A.1.h.(2).

In sum, Broussard's appellate counsel was not ineffective for failing to raise these Government-misconduct arguments on appeal, nor was Broussard denied a fair trial based on Government misconduct. His Government-misconduct arguments were not "plainly stronger" than the issue that appellate counsel raised on appeal. *Deck*, 978 F.3d at 584. Nor does this issue have merit as a freestanding claim. Accordingly, Broussard's claims for relief in Ground 22, and to the extent not procedurally defaulted in Ground 10, fail.

> j.   **Failure to Appeal Court's Denial of Motion for Acquittal
> (Grounds 11, 23)**

Broussard also argues that his appellate counsel was ineffective for failing to appeal the Court's denial of his motion for acquittal.  (2255 Mot., Ground 23; *see also id*., Ground 11.)  He contends that because of the "Court's focus on proof that drug distributions and deaths occurred, it neglected to notice the absence of evidence that made the actions illegal."  (2255 Mem. at 19.)  Namely, Broussard asserts that "despite the [G]overnment's concession that Broussard WAS NOT CONSCIOUS of a controlled substance (fentanyl) when the alleged acts occurred, it's nevertheless insisted that he's still guilty of the crimes charged because he intended to commit the acts with 4-FA, . . . which they contend is a Controlled Substance Analogue."  (*Id*.) (emphasis in original).

As the Court has repeatedly stated, the Government's position was consistent with the law, while Broussard's understanding of the law is incorrect.  (*See supra* at II.A.1.a.; Sept. 15, 2021 Order at 9–11; Sept. 6, 2022 Order at 3–6; Feb. 16, 2024 Order 12–13.)  As to the facts, while Broussard refers to the "absence" of evidence against him (2255 Mem. at 19–21), the Eighth Circuit found that same evidence to be "overwhelming" evidence of guilt.  *Broussard*, 87 F.4th at 379.   For all of these reasons, the Court finds that appellate counsel was not ineffective for failing to raise this issue on appeal and, therefore, Ground 23 offers no relief.   The failure to challenge the denial of Broussard's motion for an acquittal was not "plainly stronger" than the spark-of-life evidentiary issue that counsel raised on appeal.  *Deck*, 978 F.3d at 584.  Nor does this ground for relief have any merit as a freestanding claim in Ground 11.

### k.      Ineffective Assistance of Appeals Counsel (Grounds 13-25)

As noted earlier, Broussard asserts his ineffective assistance claims in Grounds 13 to 25 of his 2255 Motion.  The Court has addressed these claims throughout this ruling, finding them to be without merit.  For the reasons previously stated, relief under Grounds 13 to 25 is denied.

### l.      Alleged Misjoinder of Counts (Ground 26)

Finally, Broussard argues in Ground 26 of his 2255 Motion that the joinder of counts in the Indictment, while perhaps facially proper due to their similarities, ultimately prejudiced him at trial.   (2255 Mem. at 25.)  This claim appears to be asserted as a freestanding claim and not in support of a claim of ineffective assistance of counsel. Broussard contends that the Government prejudiced him by making collective offers of proof, such as evidence regarding the packaging of drugs in distinctive mylar bags bearing the name of his website, records of packages that Broussard sent to each of his witnesses, as well as emails between Broussard and many of his victims.  (*Id.*)

The Eighth Circuit has held that a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime.  *United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996).   Proof that drugs received by the victims were found in distinctive packaging would be probative for establishing the common identity of the person who provided the drugs to the victims, and regular mailing records and email communications, which were similar in kind and similar in time, would also be relevant to identity and knowledge.  *See* Fed. R. Evid. 404(b).

42

Broussard also argues that the Government unfairly prejudiced him in closing arguments by referring to the victims collectively as "healthy, vibrant, and loved people." (2255 Mem. at 26; Reply at 4.)   Additionally, he argues that he was prejudiced by the Government's use of a collage during opening statements and closing arguments that featured photographs of the victims.   (2255 Mem. at 26; Reply at 4.)   Referring to the victims collectively as "healthy, vibrant, and loved people" was consistent with the evidence introduced at trial.   Such a statement and the use of a collage of the victims during opening statements and closing arguments provides no basis for arguing that the counts in the Indictment were misjoined, prejudicing Broussard.

Likewise, the Court rejects Broussard's final misjoinder argument that the "cumulative effect of the errors" prejudiced him.   (2255 Mem. at 26.)   As Broussard acknowledges, the Court instructed the jury to consider each count separately and to not let sympathy or prejudice influence them.   (Redacted Jury Instr. Nos. 2, 6.)   While Broussard argues that such instructions were undermined by "insufficient evidence" to support the individualized counts, the Court disagrees.   On the contrary, the evidence against Broussard was in fact overwhelming.   *Broussard*, 87 F. 4th at 379.

For all of these reasons, Ground 26 of Broussard's 2255 Motion fails to provide relief.

### m.   Supplemental Memorandum [Doc. No. 421]

In addition to submitting a 26-page, single-spaced memorandum and a six-page reply, Broussard has submitted a "Request for Leave to File Continuation of

Memorandum" in support of his 2255 Motion, in which he asserts three additional arguments. These arguments fail.

Broussard's contention that the Analogue Act is unconstitutionally vague is foreclosed by *McFadden*, 576 U.S. at 196, and *United States v. Palmer*, 917 F.3d 1035, 1038 (8th Cir. 2019).

The Court also rejects Broussard's argument that the definition of a Controlled Substance Analogue as applied to 4-FA and "HEXEN" (2-(ethylamino)-1-phenylhexan-1-one hydrochloride) is unconstitutionally vague. In *United States v. Washam*, 312 F.3d 926, 930–31 (8th Cir. 2002), the Eighth Circuit noted that a statute is void if it does not sufficiently define a criminal offense so that ordinary persons can understand the prohibited conduct. For at least two reasons, the court rejected the defendant's argument that the definition of a Controlled Substance Analogue was unconstitutionally vague as applied to him and the analogue drug 1,4-Butanediol. *Id*. First, the Court noted that the defendant had actual knowledge of the illegality of his actions. *Id*. (citing evidence concerning the shipping label, the mark-up price on the chemical, and defendant's comments that other chemicals *were* legal for human consumption). Second, the Eighth Circuit found that the statute was not vague as applied because a person of ordinary intelligence would have reasonably known that selling 1, 4-Butanediol for human consumption violated the statute. *Id*. at 930–31. Here, the evidence at trial contained ample proof, particularly in email communications, that Broussard was aware of the illegality of his actions with respect to 4-FA and "HEXEN". Moreover, a person of ordinary intelligence would have reasonably known that selling these drugs violated the law.

44

Finally, for reasons stated above, the Court rejects Broussard's last-ditch argument that both trial and appellate counsel were ineffective for neglecting and refusing to present his vagueness arguments to this Court and to the Eighth Circuit.

Although the Court has considered the arguments raised in Broussard's supplemental memorandum, none of them provide a basis for relief. Accordingly, his Request for Leave to File Continuation of Memorandum is denied.

### 2.    § 2255 Evidentiary Hearing

Broussard requests an evidentiary hearing. (*See* Reply at 1–2.) A § 2255 motion may be dismissed without a hearing if: (1) the defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that Broussard's allegations are contradicted by the record, and the record includes all the information necessary for the Court to rule. Accordingly, no evidentiary hearing is required.

### 3.    Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that the basis for dismissal is not reasonably debatable. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Accordingly, the Court declines to issue a certificate of appealability.

### B. Motion to Stay [Doc. No. 415]

Also before the Court is Broussard's Motion to Stay, in which he seeks release, the opportunity to expand the record, the production of transcripts at the Government's expense, and for a detention hearing. (Mot. to Stay at 1.) Particularly in light of the ruling on his 2255 Motion, there is no basis for the requested relief, and it is denied as moot.

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Broussard's Motion to Vacate Under 28 U.S.C. § 2255 [Doc. No. 414] is **DENIED**.

2. A certificate of appealability is **DENIED** and no evidentiary hearing is necessary.

3. Broussard's Motion for Stay and Release Pending Disposition of Motion to Vacate, for Leave to Expand the Record, and for Production of Transcripts [Doc. No. 415] is **DENIED AS MOOT**.

4. Broussard's Request for Leave to File Continuation of Memorandum [Doc. No. 421] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: July 9, 2024

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge